FISHERMAN'S WHARF
ASSOCIATES II

v.

VERRILL & DANA.

Supreme Judicial Court of Maine.

Argued June 8, 1994.
Decided Aug. 18, 1994.

Michael Kaplan, Preti, Flaherty, Beliveau & Pachios, Portland, Michael B. Roitman (orally), Cohn, Roitman & Kelakos, Boston, MA, for plaintiff.

Eugene C. Coughlin (orally), Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

GLASSMAN, Justice.

Fisherman's Wharf Associates II (FWA II) appeals from a summary judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) in favor of the defendant law firm, Verrill & Dana, on FWA II's complaint seeking damages for the law firm's alleged professional negligence, negligent misrepresentation and breach of contract. We agree with FWA II that the record before the trial court presented a genuine issue of material fact whether the law firm was negligent. Accordingly, we vacate the judgment.

The parties in this proceeding are both Maine general partnerships. For purposes of the appeal of the summary judgment, the evidence discloses the following facts. FWA II was formed for the purpose of acquiring and developing for non-marine-related uses a parcel of waterfront property, known as Fisherman's Wharf, located on Commercial Street in Portland. In January 1987, FWA II sought a written legal opinion from the law firm as to how FWA II's proposed project would be affected by a citizen's initiative petition on file with the Portland city clerk.[1] The petition requested submission to the voters of the City of Portland a proposed amendment to the City's zoning ordinance that would limit development on the Portland waterfront, including Fisherman's Wharf, to marine-related uses. The proposed amendment expressly stated that its provisions "shall be applicable to all pending proceedings [sic], applications and petitions commenced after December 22, 1986, which is the date of filing this initiative in the city clerk's office of the City of Portland."

By its letter dated January 29, 1987, the law firm noted the referendum was likely to appear on the ballot of the May 1987 citywide election and that the city ordinance governing such initiatives provided that referendum-enacted ordinances take effect 30 days after the declaration of the referendum results. After quoting the above-cited retroactivity language in the initiative itself, the letter stated that "in the worst case, the proposed initiative could preclude the proposed project, for which no site plan application has yet been submitted. With reference to 1 M.R.S.A. § 302 (1989),[2] the letter continued:

> Regardless of the above provisions, it appears that any application for site plan approval pending at the passage of the initiative would be "grandfathered" under the current zoning ordinance because of the general savings clause enacted by the State Legislature at 1 M.R.S.A. § 302.... The courts have applied § 302 to grandfather zoning or subdivision applications from subsequent municipal ordinance amendments, and have held § 302 to grandfather such applications even if the applicant could not establish any constitutionally protected "vested right" for having substantially changed its position in reliance upon an application....

Because 1 M.R.S.A. § 302 has not been applied in the case law to ordinances amended by initiative, some uncertainties remain. Nonetheless, it would seem clear that in no event could the term "passage" under 1 M.R.S.A. § 302 be construed to mean the *filing* of a petition for an initia-

---

1. Among the defenses raised by the law firm is its contention that FWA II has no claim because FWA II was not the law firm's client. However, for purposes of the appeal of the summary judgment only, the law firm concedes that it had an attorney-client relationship with FWA II.

2. In pertinent part, section 302 provides that:

Actions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby. For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing.

tive, as the Working Waterfront Coalition's proposed initiative would indicate. Thus, we are of the opinion that should you have an application for site plan approval before the Planning Board for consideration prior to the initiative vote, the City would be required to treat that application under the currently existing zoning ordinance.

This letter was distributed to FWA II partners. During January and early February, 1987, one of the law firm's partners met with FWA II's partners and stated that the Fisherman's Wharf project would not be affected by the proposed zoning amendment if FWA II filed a site plan application prior to the May, 1987 election. In February, 1987, FWA II purchased the Fisherman's Wharf property for $8,000,000 (subject to the return of $1,750,000 if the development did not receive the necessary government approvals). The site plan application submitted by FWA II to the Portland Planning Board was finally approved on April 28, 1987.

On May 5, 1987, the voters of the City of Portland voted in favor of the initiated ordinance and on May 7, 1987, the initiated ordinance was declared passed. On June 4, 1987, the City approved and signed a building permit for FWA II, but did not deliver it. Instead, the City filed a complaint in the Superior Court, seeking a declaratory judgment that would determine the proper course of action with respect to the permitting of the Fisherman's Wharf project, in light of the successful citizen initiative. After a hearing on various motions filed in that proceeding, the trial court ruled that the initiated ordinance did not apply to the pending application of FWA II, and FWA II was therefore entitled to issuance of the building permit and to occupancy of the premises when constructed in accordance with the approved plans. Accordingly, a judgment was entered directing the City and its agents to issue the building permit to FWA II. On the appeal by the City, we vacated the judgment. *See City of Portland v. Fisherman's Wharf Associates II,* 541 A.2d 160 (Me.1988) (1 M.R.S.A.

§ 302 as rule of construction does not expressly or impliedly prohibit retroactive application of ordinance pursuant to authority granted municipalities by 30 M.R.S.A. § 1917 (1978)).

The Fisherman's Wharf project was never built, and in 1991 FWA II filed the instant complaint. The law firm answered and moved for a summary judgment. In support of and in opposition to the law firm's motion, the parties submitted various affidavits and depositions to the court, including the affidavit and deposition of FWA II's expert on professional liability. After a hearing, the court determined that the evidence in the record "fails to meet the legal standard in Maine for recovery under legal malpractice" and entered a summary judgment in favor of the law firm,[3] from which FWA II appeals.

■ In reviewing the grant of a motion for a summary judgment, we examine the evidence in the light most favorable to the party against whom the judgment was granted and accord that party the benefit of all favorable inferences that may be drawn from the evidence to determine whether the record supports the trial court's conclusion that there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law. *Casco Northern Bank, N.A. v. Edwards,* 640 A.2d 213, 215 (Me.1994); *Levesque v. Chan,* 569 A.2d 600, 601 (Me.1990). At the summary judgment stage of the proceeding, the task of the trial court is not to decide any disputed factual questions, but to determine whether the record before the court generates a genuine issue of material fact and, if not, whether any party is entitled to a judgment as a matter of law. *Casco Northern Bank,* 640 A.2d at 215.

■ FWA II contends that because the evidence before the trial court generated a genuine issue of material fact as to whether the law firm negligently breached its duty to FWA II to exercise reasonable professional care in its research and evaluation of the risk

---

3. The trial court did not state the significance of this determination for the plaintiff's allegations of negligent misrepresentation and breach of contract, nor did the court otherwise explicitly dispose of these separate claims for relief. Because we vacate the summary judgment, we need not address whether that judgment was properly entered in light of the pendency of these other claims.

to FWA II's proposed project by the amendment to the City's zoning ordinance, the trial court erred in granting a summary judgment to the law firm. We agree.

The law firm contends, as it did before the trial court, that as a matter of law it cannot be liable for its failure to predict the ultimate decision on that issue as evidenced in *City of Portland v. Fisherman's Wharf Associates II.* However, FWA II's complaint does not simply allege that the law firm failed to make a correct prediction as to how an unsettled legal proposition would be resolved. Rather, it contends that the law firm failed to exercise due care in evaluating the risk to FWA II posed by the proposed zoning amendment. In support of this contention, FWA II presented the affidavit and deposition of its expert, attorney Robert E. Miller. He testified that the law firm breached its duty of care to FWA II by conducting inadequate research, resulting in a negligent failure to consider the significant issues presented by FWA II's request to the law firm. The record also includes Miller's opinion that an attorney exercising the requisite standard of professional care would have advised FWA II there was a substantial risk that FWA II would be unable to go forward with its development plans if the zoning initiative were approved by the voters and would have suggested strategies that FWA II might adopt to deal with that risk.

■■■ In an action alleging professional negligence, the plaintiff must establish that the defendant had a duty to the plaintiff to conform to a certain standard of conduct and that a breach of that duty proximately caused injury to the plaintiff. *Rowe v. Bennett,* 514 A.2d 802, 804 (Me.1986). One who undertakes to render services in the practice of a profession owes a duty to exercise that degree of skill, care and diligence exercised by members of that same profession. *Id.,* see also *Sohn v. Bernstein,* 279 A.2d 529, 532 (Me.1971) (attorney malpractice). Accordingly, in *Levesque,* a medical malpractice case, we vacated the summary judgment entered in favor of the defendants, stating that the trial court "could only have granted summary judgment by concluding that [the expert] had either incorrectly stated the appli-

cable standard of care or by discounting his testimony." *Levesque,* 569 A.2d at 602. We noted that whether the expert's testimony accurately reflects the standard of care applicable to the circumstances of the case is "a question of fact to be resolved by the trier of fact." *Id.* Similarly, in the instant case, the trial court could have granted a summary judgment in favor of the law firm only by impermissibly assessing the weight or credibility of the testimony of FWA II's expert or by determining that the expert had incorrectly stated the standard of care applicable to the law firm. Because these are matters reserved for the factfinder following a trial of a case on the merits, the trial court erred in granting a summary judgment in favor of the law firm.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.