**Joanne WELCH et al.**

v.

**Daniel J. McCARTHY.**

Supreme Judicial Court of Maine.

Argued Feb. 7, 1996.
Decided June 17, 1996.

Kenneth W. Hovermale, Jr. (orally), Bornstein & Hovermale, Portland, for Plaintiffs.

Carl W. Tourigny (orally), Christopher D. Nyhan, Preti, Flaherty, Beliveau & Pachios, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Joanne and Colburn Welch appeal from a summary judgment entered in the Superior Court (Penobscot County, *Marden, J.*) in favor of Daniel J. McCarthy, D.D.S. The Welches contend that (1) a motion for a summary judgment based on the statute of limitations is not appropriate prior to the submission of the case to the pre-litigation screening panel; and (2) the court erred in granting a summary judgment on the statute of limitations because a genuine issue of material fact exists whether McCarthy had a duty to warn Joanne of recently discovered dangers regarding the implants inserted in her body. We vacate the judgment.

In 1983 Joanne Welch sought treatment by McCarthy for problems with her jaw. In 1984 McCarthy surgically inserted proplast silastic meniscus implants on both sides of Joanne's jaw. McCarthy followed Joanne's condition until April 1985. In October 1987 Joanne received a letter from McCarthy informing her that it had recently come to his attention that some changes in her jawbone may have occurred as a result of her implants; that a small percentage of patients in whom proplast meniscus implants had been inserted had developed degenerative changes in the bone; and that in many cases these changes occurred without any symptoms. The letter stated that as a result of her implants she could also develop bone changes, and it recommended that she make an appointment to determine the status of her joints.

As a result of the letter McCarthy examined Joanne in November 1987. McCarthy told her that her x-rays were the same as they were in March 1985 and recommended no treatment at that time. No further communication occurred between Joanne and McCarthy until August 1992, when she received a certified letter from him. The second letter referred to and reiterated the information in the 1987 letter and requested that Joanne contact McCarthy's office for an examination and evaluation to determine the status of her joints and implants. The letter was prompted by McCarthy's receipt of additional information regarding problems with the implants. McCarthy examined Joanne in September 1992 and recommended she have the implants removed. In March 1993 McCarthy removed the implants. Because of continuing problems another surgical procedure was performed by a different surgeon in February 1994.

On October 26, 1993, the Welches served a written notice of a medical malpractice claim on McCarthy. In their notice of claim they

alleged that McCarthy negligently diagnosed and/or treated Joanne. The Welches' specifically claimed that the negligent treatment included McCarthy's failure to schedule· or perform follow-up examinations on Joanne within the statutory period and delayed informing Joanne of the dangers of the jawbone implants.

McCarthy filed a motion for a summary judgment on the basis of the statute of limitations. Subsequently, the Welches moved to amend the notice of claim to allege fraudulent concealment based on facts revealed through discovery. The court found that there was no evidence of fraudulent concealment and granted a summary judgment in favor of McCarthy on the basis of the statute of limitations. This appeal followed.

■■■ In reviewing an appeal from the grant of a summary judgment we view the evidence in a light most favorable to the party against whom the judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dep't of Pub. Safety,* 665 A.2d 681, 682 (Me. 1995). When there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law we will affirm a summary judgment. *Id.* at 682–83.

## I.

■■ The Welches contend that it was inappropriate for the court to consider the statute of limitations issue on a motion for a summary judgment prior to the submission of the case to the pre-litigation screening panel because the court analyzed factual questions. They contend that the only affirmative defenses that the court should consider are those claimed and determined pursuant to a M.R.Civ.P. 12(b)(6) motion to dismiss.

1. 24 M.R.S.A. § 2853(5) (Pamph.1995) states that:

> Both parties ... may request that certain preliminary legal affirmative defenses or issues be litigated prior to submission of the case to the panel. The panel has no jurisdiction to hear or decide, absent the agreement of the parties, dispositive legal affirmative defenses, except: ... comparative negligence. The panel chair

■■ Medical malpractice actions may be brought after serving a notice of claim on the person accused of professional negligence and filing a written notice of claim with the Superior Court. 24 M.R.S.A. § 2903 (1990 & Pamph.1995). A plaintiff must then present her claim to a pre-litigation panel before pursuing the claim in court. 24 M.R.S.A. §§ 2851–2859 (1990 & Pamph.1995). The panel determines whether a breach of the standard of care has occurred and whether that breach is the proximate cause of the injury. 24 M.R.S.A. § 2855 (1990). The parties may, however, litigate "certain preliminary legal affirmative defenses or issues" in the Superior Court prior to submission of the case to the panel.[1] 24 M.R.S.A. § 2853(5) (Pamph.1995).

We have not expressly determined whether section 2853(5) contemplates the Superior Court's consideration of motions for a summary judgment. *See Gubellini v. Wilson,* 541 A.2d 1290, 1290 n. 2 (1988) (affirming a summary judgment on statute of limitations basis, without intimating an opinion on the procedure); *see also Ogden v. Berry,* 572 A.2d 1082, 1083–84 (1990) (affirming a summary judgment on the basis of statute of limitations without addressing whether the Superior Court was precluded from considering the motion).

In the instant case the pre-litigation panel chair granted McCarthy's request to litigate in court the statute of limitations defense. Based on the plain meaning of the language of 24 M.R.S.A. § 2853(5) the Superior Court was not precluded from considering a motion for a summary judgment based on the affirmative defense of the statute of limitations prior to the panel's consideration of the case. M.R.Civ.P. 8(c).

## II.

■ The Welches contend that McCarthy negligently failed to warn Joanne within the

> may require the parties to litigate, by motion, dispositive legal affirmative defenses in the Superior Court prior to submission of the case to the panel. Any such defense, as well as any motion relating to discovery that the panel chair has chosen not to rule on may be presented, by motion, in Superior Court without the necessity of a complaint having first been filed.

statutory period of his evolving knowledge of the increasing dangers of the presence of the implants in her body. They contend that because McCarthy's alleged negligence occurred within three years prior to their notice of claim this action is not time barred. McCarthy contends that because Joanne alleges that she suffered injuries as a result of the effect of the implants, the act or omission of alleged professional negligence to which the statute of limitations must apply occurred in 1984 when he performed the implant surgery. He contends that the Welches' action is time-barred given that Maine has not adopted a "continuous treatment" rule.

■ The statue of limitations for medical malpractice is three years after the cause of action accrues, defined as "the date of the act or *omission* giving rise to the injury." [2] 24 M.R.S.A. § 2902 (1990) (emphasis added). The plaintiff in an action alleging professional negligence must prove that the defendant had a duty to the plaintiff to conform to a certain standard of conduct and that a breach of that duty proximately caused the plaintiff's injury. *Fisherman's Wharf Assocs. II v. Verrill & Dana*, 645 A.2d 1133, 1136 (Me. 1994). In medical malpractice actions expert testimony is ordinarily required to establish the appropriate standard of medical care, that the defendant departed from that standard, and that the plaintiff's injury was proximately caused by the negligent conduct. *Chasse v. Mazerolle*, 622 A.2d 1180, 1182 (Me.1993).

■ Whether a party owes a duty of care to another is a question of law. *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246 (Me.1995). The breach and proximate cause issues are questions of fact. *Greenstreet v. Brown*, 623 A.2d 1270, 1272 (Me.

1993); *Seiders v. Testa*, 464 A.2d 933, 935 (Me.1983). A person who undertakes to render services in the practice of a profession owes a duty to exercise that degree of skill, care and diligence exercised by members of that same profession. *Fisherman's Wharf Assocs.*, 645 A.2d at 1136. Under the circumstances of this case it is a question of fact whether McCarthy breached that duty by failing to warn Joanne about later discovered dangers of the implants he inserted in her body.

In *Tresemer v. Barke*, 86 Cal.App.3d 656, 150 Cal.Rptr. 384, 392–94 (1978), the court found that the plaintiff stated a cause of action against the physician, who had inserted an intrauterine device, on the theory that the physician had failed to warn her of dangerous effects of the device, when subsequent to the insertion the physician obtained factual knowledge of its hazards. Such failure constituted a negligent breach of the duty to warn arising by virtue of the confidential relationship between the physician and the plaintiff. *Id.* 150 Cal.Rptr. at 394; *cf. Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir.1992) (manufacturer's duty to warn extends only to physician, who then has the duty to warn patients of risks associated with prescription drugs or medical devices).

The affidavit of the Welches' expert states that between November 9, 1987, and August 26, 1992, McCarthy had an affirmative duty to contact Joanne to schedule an appointment to x-ray her jaw and recommend removal of the implants because of the oral surgical literature reporting problems with these implants. In the expert's opinion each day during this time period that McCarthy did not contact her was a separate breach of the accepted standard of care in oral surgery and caused her harm.[3] Also, there was dis-

---

**2.** An exception is provided when the plaintiff's claim is based on the defendant leaving a foreign object in the patient's body; in such cases the period begins from the time the patient discovers or should have discovered the harm. 24 M.R.S.A. § 2902 (1990). "[T]he term 'foreign object' does not include a chemical compound, prosthetic aid or object intentionally implanted or permitted to remain in the patient's body as a part of the health care or professional services." *Id.* The implants in the instant case are not foreign objects within the meaning of section 2902 because they were "intentionally implant-

ed" and were purposefully to remain in Joanne's jaw. *Id.*

**3.** The court found that the affidavit of the Welches' expert was "couched in terms of legal duty or obligation," outside the scope of his expertise and not admissible for this purpose. Affidavits submitted in support of or in opposition to motions for a summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." M.R.Civ.P.

puted evidence about the advice McCarthy gave Joanne at her examination in 1987. In his deposition McCarthy stated that during Joanne's 1987 visit he told her that at some point her implants should be removed, she was reluctant to have surgery, and he advised her to follow up in a year. In her affidavit Joanne stated that in 1987 McCarthy recommended that she not have the implants removed at that time and told her to call if her symptoms got worse. Thus, there is a material issue of fact regarding whether, on the facts of this case, during the statutory time period, McCarthy breached the required professional standard of care by failing to warn Joanne of the then known dangers associated with her implants.

Because we vacate on other grounds, we need not determine whether a genuine issue of material fact exists whether McCarthy fraudulently concealed his evolving knowledge of the serious nature of the harm being caused by the implants because he feared the consequences of a malpractice suit.

The entry is:

Judgment vacated.

All concurring.

---

56(e). An expert cannot testify to matters clearly not within the scope of his specialized knowledge. Field & Murray, *Maine Evidence*, § 702.1 at 7–9 to 7–10 (3d ed. 1994). An expert opinion, however, is not inadmissible because it addresses an ultimate issue to be decided by the trier of fact. M.R.Evid. 704. The court focused too narrowly on the expert's choice of words. A broader reading of the affidavit reveals that the expert was giving his medical opinion about the standard of care, McCarthy's deviation from that standard, and the harm that his breach caused. Whether an expert's testimony accurately reflects the applicable standard of care is a question of fact. *Fisherman's Wharf Assocs. v. Verrill & Dana*, 645 A.2d 1133, 1136 (Me.1994) (citation omitted).