1998 ME 124

**Joseph P. FEENEY**

v.

**HANOVER INSURANCE CO.[1]**

Supreme Judicial Court of Maine.

Argued April 6, 1998.
Decided May 28, 1998.

---

6.  Former 19 M.R.S.A. § 317.

1.  Feeney's first complaint named John Carpenter and P.D.J.L., Inc. (d/b/a Jones Landing) as defendants.  P.D.J.L. filed a petition for liquidation in the Bankruptcy Court, and no claim was stated against it in the amended complaint, which add-

ed Michael Zamek and Hanover Insurance as defendants.  By later agreement of the parties, claims against Carpenter and Zamek were dismissed with prejudice pursuant to M.R. Civ. P. 41(a).  Hanover is thus the remaining defendant.

Joseph L. Bornstein (orally), Portland, for plaintiff.

James D. Poliquin (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Joseph P. Feeney appeals from a judgment of the Superior Court (Cumberland County, *Saufley, J.*) in favor of defendant Hanover Insurance Co. Feeney contends that the court erred in interpreting the uninsured vehicle statute and in concluding that Hanover's policy provided no uninsured/underinsured motor vehicle coverage for Feeney's claim. Finding no error, we affirm the judgment.

[¶ 2] Feeney drank alcohol with friends and acquaintances at various places on Peaks Island throughout the afternoon and evening of April 26, 1993, and spent much of the evening at Jones Landing, a local restaurant. Toward midnight Feeney left the Landing with four acquaintances: Molly Mellen, who was a bartender at Jones Landing, Jack Gray, Michael Zamek, and John Carpenter. Feeney could walk and talk but was extremely intoxicated; all but Mellen had been drinking. The group left in Carpenter's flatbed truck, with Carpenter ultimately intending to drop Feeney off at his house on the outside shore of the island. En route, the group stopped at a coastal rock outcrop known as the Whale Back for about an hour. Sitting 15 to 25 feet in front of the parked truck, Carpenter talked with Gray about Carpenter's marital problems. Carpenter had had four to six beers at the Landing, and consumed two or three more at the Whale Back. Feeney got off the bed of the truck and got into the cab, where he fell asleep or passed out. Mellen and Zamek talked near the truck, and each consumed a beer. Zamek noticed Feeney and decided to "go roust him" by opening the passenger door against which Feeney was leaning. When Zamek opened the door, Feeney fell out and landed head first on a large rock.

[¶ 3] Carpenter, sitting alone some distance from the truck, apparently did not see the incident. Mellen and Gray helped Feeney, who was conscious and swearing at Zamek, into the truck.[2] Feeney stated that he wanted to ride in the back, so he got out, on his own, and climbed into the bed of the truck. The group drove to Mellen's house with Gray holding Feeney with one arm. At Mellen's house Feeney did not get out of the truck; Mellen had to go back and convince him to come in out of the cold, and she helped him walk into the house. Mellen helped Feeney remove his wind breaker and sneakers, and put him in a bed. The next morning she heard him calling her name and

**2.** Gray had "babysat" for Feeney on other occasions, for example carrying him home after finding him passed out in a snow bank.

saying that he could not move. When she went into his room he was paralyzed and in obvious pain. She called the police, and he was transported to Maine Medical Center, where he remained paralyzed for several days.

[¶ 4] Feeney suffered a fractured neck requiring significant medical intervention, the cost for which the parties stipulate exceeds $100,000, the limit on the uninsured motorists clause of the Hanover policy held by Feeney's father and under which Feeney was an insured. Because Zamek had no motor vehicle liability insurance at the time of the incident and Carpenter had coverage of only $20,000, Carpenter's vehicle was underinsured pursuant to the uninsured vehicle statute.[3] Feeney asserted a claim against Hanover under the uninsured motorists coverage clause of the policy, alleging that both Zamek and Carpenter were tortfeasors who had caused his injury.

[¶ 5] As to the allegations implicating Zamek, the court rejected Feeney's theory that he was legally entitled to recover from Zamek as an operator of Carpenter's underinsured vehicle and granted a partial summary judgment to Hanover.

[¶ 6] As to Hanover's liability to Feeney arising from Carpenter's conduct, the court concluded there were material facts in dispute, and denied a summary judgment. The court heard the case and decided it following a non-jury trial. The parties stipulated that

the sole issues before the court were the nature and extent of the duty owed by Carpenter to Feeney, whether there was a breach of that duty, and whether any such breach resulted in Hanover's liability to Feeney pursuant to its uninsured/underinsured motor vehicle policy. The court concluded that by volunteering to take Feeney home, Carpenter assumed a duty to conduct himself in a reasonable manner toward Feeney. It found, however, that Feeney failed to prove that Carpenter breached that duty. Accordingly, because Feeney was not legally entitled to recover for his injuries from Carpenter as the owner or operator of the underinsured vehicle, the uninsured/underinsured provisions of Hanover's policy were not implicated, and judgment was entered for Hanover. This appeal by Feeney followed.

### I.

[¶ 7] Feeney contends that the court erred in granting a partial summary judgment to Hanover based on Zamek's conduct. He argues that Zamek was an operator of Carpenter's truck when he caused Feeney's injury, and because Feeney is legally entitled to recover from Zamek for his injuries, Feeney's damages are covered by the uninsured motorist clause of the Hanover policy.[4] Feeney thus alleges that Zamek qualified as an "operator" of the truck pursuant to the uninsured vehicle statute,[5] by virtue of opening

---

3. *See infra* note 5.

4. The policy provided uninsured motorist coverage of $100,000 per person per accident. Part C(1) of the policy provided:

   We will pay compensatory damages which an "insured" is legally entitled to recover *from the owner or operator* of an "uninsured motor vehicle" because of "bodily injury:"
   1. Sustained by an "insured;" and
   2. Caused by an accident.
   The *owner's or operator's liability* for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."
   (emphasis added).

5. Title 24–A M.R.S.A. § 2902(1) (1990) requires automobile insurance policies to cover uninsured and underinsured vehicles, providing in pertinent part:
   **2902. Uninsured vehicle coverage; insolvency of insurer**

1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages *from owners or operators* of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, *resulting from the ownership, maintenance or use* of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this

the door against which Feeney was leaning. We disagree.

■ [¶ 8] An automobile insurance policy "is presumed to incorporate all relevant mandatory provisions of the statutes under which it was made." *Wescott v. Allstate Ins.*, 397 A.2d 156, 166 (Me.1979) (construing 24–A M.R.S.A. § 2902). Thus the Hanover policy insuring Feeney must be interpreted consistently with the uninsured vehicle coverage provisions found in 24–A M.R.S.A. § 2902 (1990).

[¶ 9] In construing the uninsured motor vehicle statute, we are guided by the rule that the "fundamental rule in statutory construction is that words must be given their plain meaning." *McGillivray v. Royal Ins. Co.*, 675 A.2d 524, 526 (Me.1996) (refusing to construe "party's" in § 2902 as pertaining to multiple parties). Feeney would have us interpret the words "operate" and "use" in § 2902(1) as synonymous and thus broadly inclusive of such acts as Zamek's opening the truck door. Section 2902(1), however, is triggered only when the insured (in this case Feeney) is legally entitled to recover damages from *owners* or *operators* of underinsured vehicles. Because Zamek did not own the truck, Hanover would be liable to Feeney only if Zamek could be deemed an operator.

[¶ 10] Contrary to Feeney's contention, the definitional section of the motor vehicle statute, 29–A M.R.S.A. § 101, does not support the conclusion that Feeney operated the vehicle:

> State or less than the limits of the injured party's uninsured vehicle coverage.
> (emphasis added).
> Although the term "uninsured motorists" is used by the policy and in some of our decisions, *see, e.g., Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me.1983), strictly speaking the statutory point of reference is the insurance status of the *vehicle*. *See* 24–A M.R.S.A. § 2902(1). Thus, because Carpenter's coverage was less than the limits of the uninsured motorist policy held by Feeney's father, the vehicle was underinsured. *Cf. McGillivray v. Royal Ins. Co.*, 675 A.2d 524 (Me.1996) (relevant comparison was between amount of liability coverage and amount of underinsured coverage on vehicle).

6. The Restatement (Second) of Torts § 324 (1965) provides:

(48) **Operator.** "Operator" means an individual who drives or is in control of a vehicle or who is exercising control over or steering a towed vehicle.

We cannot accept Feeney's conclusory assertion that although Zamek was not free to drive Carpenter's vehicle, he was in control of the vehicle in its parked state, because Carpenter had "temporarily surrendered control of the vehicle while he sat some twenty feet away." There is no evidence in the record of this purported surrender, nor any evidence that Zamek was trying to reach the controls of the vehicle; he merely opened the passenger door from the outside. Because Zamek's purported use of the truck did not constitute operation, he was not an operator, and summary judgment was correctly entered on Feeney's claim of coverage based on his entitlement to recover from Zamek.

## II.

■ [¶ 11] Unlike Zamek, Carpenter held title to the truck and is indisputably an "owner or operator" for purposes of the policy and the uninsured vehicle statute. If Carpenter in fact breached a duty of care to Feeney, by the terms of the policy Hanover would owe Feeney, as its insured, compensation for injury arising out of Carpenter's ownership or operation. The court concluded, based on the legal duty that arises when one takes charge of another who is helpless,[6] that once Carpenter agreed to take the visibly intoxicated Feeney home, he had a duty to conform to the legal standard of reasonable conduct in light of the apparent risk.[7] Feeney

§ 324 Duty of One Who Takes Charge of Another Who is Helpless
One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
   (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
   (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

7. Because we conclude that the court was not compelled to find that Carpenter breached a duty to Feeney, we do not address Hanover's contention that the court erred in concluding that Carpenter owed a duty to Feeney.

failed to persuade the court, however, that Carpenter did not act reasonably or exercise ordinary care.

■ [¶ 12] Whether a party has breached a duty of care to another is a question of fact. *See Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me.1996). The court's findings reflect the lack of evidence showing Carpenter's behavior to be unreasonable.[8] Feeney offers only the single conclusory statement that Carpenter left "the helpless Feeney in the truck under the care of a seriously impaired co-passenger [Zamek]." Feeney falls far short of showing that the court was compelled to find that Carpenter breached any duty to Feeney. *See Dawson v. Lussier*, 632 A.2d 128, 129 (Me.1993) ("A trial court's finding that a party failed to carry his or her burden of proof on a factual issue will be reversed on appeal only if the nature of the evidence is such that the factfinder would be compelled to believe it.") (citing *Gonthier v. Horne*, 576 A.2d 745 (Me.1990)).

■ [¶ 13] All of Feeney's theories of liability as to Carpenter require either that Carpenter knew or had reason to know of the necessity and opportunity to control Zamek,[9] or that Carpenter permitted Zamek to operate the vehicle.[10] The Superior Court's well-supported finding that Zamek's unexpected and unusual action was not something that

---

8. The Superior Court concluded:

At the time Zamek opened the cab door and allowed Feeney to fall out, Carpenter was not operating the vehicle. He was not present at the truck. He did not see Zamek approach or open the door. He did not hear Zamek threaten or comment about opening the door. When he left Feeney at the truck, he was aware of Feeney's state of serious intoxication. He described Feeney as "just about passed out" on the trip to Whaleback. His responsibility was to assure that Feeney would be safe.

Carpenter left Feeney with or near Zamek and Mellen when he went to sit on the rocks. Mellen was sober. Zamek was likely intoxicated. Feeney was in no danger or risk that was apparent to Carpenter, or would have been apparent to a reasonable person, when Carpenter and Gray walked off to talk. There is no credible evidence in the record before this court that Carpenter should have been aware that Zamek or any other person presented a risk to Feeney. There is no credible evidence of any unpleasant history between Zamek and Feeney or of any prior occasion on which any of the individuals present, including Zamek, had opened a cab door as a joke or otherwise, when someone was leaning on the door. In fact, the evidence is to the contrary. Feeney was known to be a person who was regularly intoxicated to the point of needing assistance from others. Mellen and Gray had provided that help on prior occasions. Nothing new occurred on the trip to Whaleback which should have alerted Carpenter to any risk to Feeney.... This court finds that Zamek's unusual and unanticipated action was not within the realm of risks that would or should have been apparent to Carpenter.

Based on evidence in the record, the court also noted that Carpenter did not leave Feeney in any worse position than when he found him at the bar.

9. Feeney intimates that the court erred by refusing to find that Carpenter permitted a third party to use his truck, thereby imposing on Carpenter a duty of care to control the conduct of its user, Zamek. Feeney bases his argument on the Restatement (Second) of Torts § 318 (1965) (Duty of Possessor of Land or Chattels to Control Conduct of Licensee). He also cites section 302 of the Restatement (Second) of Torts (1965) (Risk of Direct or Indirect Harm). There is no evidence in the record, however, to compel a conclusion contrary to the court's specific factual findings that "Carpenter gave Zamek no permission to use his truck in his absence" and that "Zamek's unusual and unanticipated action was not within the realm of risks that would or should have been apparent to Carpenter."

Carpenter likewise did not breach a duty to Feeney as a guest passenger, because the facts do not compel a conclusion that Carpenter did not act as "a person of ordinary intelligence and reasonable prudence and judgment[ ] ordinarily exercises under like or similar circumstances." *Beaulieu v. Beaulieu*, 265 A.2d 610, 612 (Me. 1970) (discussing the host-operator's duty of care). Contrary to Feeney's suggestion that the reasonable and prudent course of action would have been for Carpenter to drive Feeney home immediately after leaving the bar rather than "in the care of a seriously impaired co-passenger," Feeney was with a group of friends who had taken care of him on numerous instances when he was drunk.

10. Feeney argues that Carpenter was negligent in allowing an intoxicated person to operate the vehicle. Statutory liability is inapplicable, because Zamek was neither an operator of the vehicle nor in control of it. *See* 29-A M.R.S.A. § 1653(1) (1996) (imposing liability on owner who gives intoxicated operator control of vehicle). Feeney's common law theory of negligent entrustment similarly founders on the factual finding that Carpenter did not surrender control and on the lack of evidence showing that Zamek operated the vehicle.

Carpenter could or should have reasonably foreseen, and its conclusion that Feeney presented no facts in support of any claim that Zamek had permission from Carpenter to operate the truck, were not erroneous.

The entry is:

Judgment affirmed.