STATE OF MAINE

OXFORD, SS.



RECEIVED AND FILED

AUG - 7 2000

Donna L. Howe
CLERK OF COURTS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-97-08

TDW OXF 8/7/2000

DONALD L. GARBRECHT
LAW LIBRARY

AUG 17 2000

RICHARD BLAKE, et al.,

Plaintiffs

v.

RATNAKAR R. ANDALKAR, et al.,

Defendants

ORDER ON DEFENDANT
HOSPITAL'S RENEWED
MOTION FOR SUMMARY
JUDGMENT

Before the court is defendant Stephens Memorial Hospital's renewed motion for summary judgment with respect to three issues that were the subject of the court's January 7, 2000 order on Stephens Memorial's initial motion for summary judgment.[1]

1.    Alleged Failure to Honor Plaintiffs' Request to Change Doctors

The court previously concluded that plaintiffs had demonstrated the existence of a genuine issue for trial on their claim that employees of Stephens Memorial failed to respond adequately to requests by Michelle Blake to obtain a different physician. Plaintiffs have offered expert testimony that the acts and omissions of Stephens Memorial's employees on this issue constituted a departure from the relevant standard of care. The remaining question is what consequences, if

---

[1] The court's January 7, 2000 decision and order on Stephens Memorial's first motion suggested that several issues that were the subject of that motion might need to be revisited at or prior to trial. At a subsequent conference on January 31 Stephens Memorial sought and was granted leave to file a renewed motion on these issues. At the conference counsel for plaintiffs did not object to Stephens Memorial's intention to renew its motion, probably because plaintiffs were themselves seeking leave to revisit two other issues previously decided -- their motion for a change of venue and their motion to exclude certain experts designated by defendant Andalkar.

any, follow from such a departure if proven at trial.

Presumably because the court suggested in its January 7 order that one result might be to convert Dr. Andalkar, otherwise an independent contractor, into the hospital's agent, Stephens Memorial and the plaintiffs have focused on concepts of agency. Stephens Memorial points out, quite correctly, that well-settled principles of agency require either (1) the existence of an actual agency relationship between the principal and the agent or (2) the creation of an apparent agency relationship as a result of representations made by the principal to a third party. See Restatement (Second), Agency §§ 26, 27 (1958). No actual agency relationship existed between Stephens Memorial and Dr. Andalkar, nor were any representations of agency made in this case. Indeed, the court has previously concluded that plaintiffs have not demonstrated the existence of a genuine issue for trial on the issue of apparent agency. Upon reexamination of the record, the court adheres to its initial ruling on that issue.

In this connection, plaintiffs continue to argue that the court should follow certain decisions from other states which relax the traditional requirements of the apparent agency doctrine and hold hospitals responsible for the acts or omissions of physicians who would otherwise qualify as independent contractors. The Law Court, however, has not adopted the more lenient tests for apparent agency set forth in those decisions.[2] While a hospital's advertisements could under certain

---

2 Many of those decisions appear to depart from the rule that the mere fact that acts are performed by someone who the injured party believes to be an agent is insufficient to establish an agency relationship. See Restatement (Second), Agency § 267, comment a (1958).

2

circumstances constitute a sufficient representation that all the doctors who practice at the hospital are its agents, plaintiffs have not demonstrated that there is a disputed issue for trial on that issue in this case.

Beyond that, any theory that the plaintiff in this case relied on the skill of the doctor assigned by the hospital, see Restatement (Second) Agency § 267, is belied by plaintiffs' claim here that she did not want Dr. Andalkar to be her doctor and had attempted to change doctors from the outset. Therefore, any finding of agency in this case would have to depend upon some kind of theory that when a hospital does not honor a patient's wish to change her treating physician, it converts that treating physician into its agent. There are two problems with such a theory of "compelled agency". First, the court has not found any precedent for such a theory. Second, this theory potentially sweeps too broadly in that it could also make hospitals potentially liable in situations where the only physician available was an independent contractor or where a patient's chosen physician did not have privileges at the hospital in question.

Any liability of Stephens Memorial in this case for the alleged failure to respond to Mrs. Blake's request to change physicians, therefore, must be derived from basic principles of tort law with respect to an actor's liability for the consequences of a breach of duty. See, e.g., Restatement (Second), Torts §§ 435, 447 (1965).[3] In this case, if plaintiffs prove that the hospital breached the relevant standard of care with respect to Mrs. Blake's requests to change physicians, the

---

[3] This is the position argued by defendant Andalkar.

3

obvious consequence is that Mrs. Blake continued to be treated by Dr. Andalkar. Under those circumstances there is at least a triable issue as to whether the hospital would be responsible for any injury suffered by Mrs. Blake as a result of any subsequent negligence by Dr. Andalkar. E.g. Restatement (Second) Torts, § 879, comment b, illustration 3. In addition, as the court has previously found, there is also a disputed issue for trial with respect to the hospital's liability for any emotional distress suffered by Mrs. Blake as a result of its responses to Mrs. Blake's request to change doctors.

In summary, on the issue of whether Stephens Memorial can be held liable for the alleged breach of ability with respect to Mrs. Blakes' requests to change doctors, including the issue of whether Stephens Memorial may thereby be held responsible for any subsequent malpractice committed by Dr. Andalkar, the hospital's motion for summary judgment is denied.

2.    Alleged Failure to Monitor

In addition to their claim that Stephens Memorial failed to adequately respond to Mrs. Blake's request to change doctors, plaintiffs also contend that the hospital, through its nursing staff, failed to appropriately monitor Mrs. Blake's condition. Part of this involved the hospital's alleged failure to designate a primary nurse -- an issue that is also relevant to the hospital's alleged failure to respond to Mrs. Blake's requests to change her doctor as discussed above. However, to the extent plaintiffs are also seeking to hold the hospital liable for alleged failures by the

4

nursing staff in other respects[4], their claims are not supported by expert testimony that would permit them to go to trial. General statements by plaintiffs' nursing expert that there was a failure to coordinate Mrs. Blake's care by the nursing staff are not sufficient to establish a prima facie case that this alleged failure damaged Mrs. Blake. Plaintiffs have offered no expert testimony, for example, that it was a departure from the relevant standard of care for nurses or other employees at the hospital not to have questioned Dr. Andalkar's entry with respect to the colonoscopy, not to have caused the pathology report to be read by a doctor sooner than it was, and not to have understood the seriousness of Mrs. Blake's condition prior to August 2, 1995. The absence of such testimony precludes plaintiffs from pursuing these claims against the hospital. Welsh v. McCarthy, 677 A.2d 1066, 1069 (Me. 1996). See Corey v. Norman Hanson & DeTroy, 1999 ME 196 ¶¶ 12-14, 742 A.2d 933, 939-40 (summary judgment entered based on absence of expert testimony where such testimony was required).

3.      Alleged Involvement with Respect to Lack of Informed Consent

For essentially the same reason, the hospital is entitled to summary judgment with respect to plaintiffs' claim against the hospital for its alleged involvement in Mrs. Blake's lack of informed consent for the surgeries performed by Dr. Andalkar. Plaintiff's nursing expert stated that she "would be concerned" about whether a nurse sufficiently inquired if Mrs. Blake understood the consent forms she signed.

---

[4] These other respects apparently consist of an alleged failure to note that a complete colonoscopy did not occur, an alleged delay in the reading of a pathology report, and an alleged failure to appreciate the deterioration of Mrs. Blake's condition in the period immediately prior to her emergency surgery on August 2, 1995.

5

She also stated that she had no information as to what had occurred between nurses and Mrs. Blake on this subject and that, at the time of her deposition, she was not critical of any nurse on the informed consent issue. Simons Dep. 141-44. Given the requirement that the plaintiffs establish a breach of the relevant standard of care through expert testimony, Welsh v. McCarthy, 677 A.2d at 1069, plaintiff cannot pursue a liability claim against Stephens Memorial with respect to informed consent where plaintiff has not specifically identified any breach of the relevant standard of nursing care on this issue. It is far from clear what role, if any, a nurse has in the informed consent process, and the jury may not be left to speculate on that issue. Summary judgment is granted for the hospital on the issue of informed consent. Plaintiffs' informed consent claims remain for trial against Dr. Andalkar.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED: July 3/ , 2000

_____
    Thomas D. Warren, Justice
    Superior Court

6