STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, SS                                          CIVIL ACTION
                                                       DOCKET NO. CV-07-454

WALTER CUCCI,
          Plaintiff
                                                       ORDER ON
                                                       DEFENDANT'S MOTION
v.                                                     FOR SUMMARY
                                                       JUDGMENT

MERCY HOSPITAL,
          Defendant


Before the Court is Defendant Mercy Hospital's Motion for Summary Judgment.

## BACKGROUND

The Plaintiff Walter W. Cucci (hereinafter "Plaintiff" or "Cucci") seeks to recover damages from Defendant Mercy Hospital (hereinafter "Defendant" or "Mercy Hospital") for the alleged medical negligence caused by a certified nursing aid ("CNA") employed by the hospital. The parties agreed to waive the pre-litigation screening and mediation panels mandated by 24 M.R.S. §§ 2851-2859 (2007). Accordingly, the case proceeded directly to the Superior Court.

The following facts are undisputed. Cucci was eighty-two (82) years old when he underwent lumbar fusion surgery on December 19, 2005 at Mercy Hospital. Dr. Rajiv Desai performed the surgical procedure. Mercy Hospital's Laminectomy/Fusion Patient Plan of Care ("Fusion Plan of Care") called for Cucci to be taught how to get out of bed. Specifically, the Fusion Plan of Care instructed Cucci to roll to his side, raise his HOB (head of bed), use his arms to raise his torso to a sitting position, and use his leg muscles to raise his body to a standing position. Cucci's Physical Therapy Plan of Care called for him to successfully ambulate with supervision and the assistance of a straight cane for 40 meters by December 24, 2005. On the morning of December 20, 2005, Cucci

made his first post-surgery walk without incident.[1] Later that same afternoon, Jeff Langley ("Langley") a CNA employed by Mercy Hospital assisted Cucci for his second therapeutic walk of the day. Langley appeared to Cucci to be in a rush. Once Cucci was up and holding on to his walker, he took two or three steps with Langley accompanying him on the right, pushing his IV pole.

There are three central factual disputes of this case.[2] The first is whether Langley struck Cucci with the IV pole, as asserted by Cucci during his deposition, versus Langley's affidavit that he did not see or feel the IV pole strike Cucci. The second is whether Cucci could not (and did not) continue to walk after this incident versus Langley's affidavit that states that Cucci and Langley continued to walk. The third is the amount of pain that Cucci developed in the days following this incident.

On December 25, 2005, Cucci's surgical site was evaluated at the Maine Medical Center and determined to be intact and healing appropriately. He was diagnosed with a right leg ligament strain and possible meniscal tear. On January 5, 2006, Plaintiff was discharged from the Maine Medical Center. At the time of his deposition, Cucci complained of intermittent pain in his right knee and in his piriformis muscle (located in the gluteal region of the lower limb).

---

[1] The Defendant states that Nancy Shedd, RN *initiated* Cucci's first walk whereas the Plaintiff denies this and states that the exhibit relied on for this proposition indicates that Nurse Shedd merely *initialed* the Fusion Plan of Care on that date. However, the parties agree that on the day following his surgery Cucci took his first post-surgery walk with a female nurse. Def.'s Reply S.M.F. ¶ 5, Pl.'s O.S.M.F ¶ 5. Therefore, this minor distinction is not material to the Court's determination of summary judgment. *See Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4 n. 3, 770 A.2d 653, 655 (stating that "[a] fact is material if it has the potential to affect the outcome of the case under governing law."). The Plaintiff makes this same distinction is his denial of Def.'s S.M.F. ¶ 8. Again, the *initiated* versus *initialed* distinction is not material to whether the post-surgery Physical Therapy Plan of Care called for a certain amount of ambulation prior to Cucci's discharge.

[2] The Plaintiff denies Def.'s S.M.F. ¶ 10 regarding the time and distance limitations of the therapeutic walks, but offers no record citation. Similarly, the Plaintiff asserts that the resulting injury has caused significant pain and restriction of activities, but provides no record citation. Pl.'s O.S.M.F. ¶ 19. The Defendant objects to numerous "facts" made in Pl.'s O.S.M.F. on grounds of either the "facts" are inadmissible hearsay; they are beyond the ken of the average person and therefore require expert testimony; and/or they are impermissible argument. The Court can resolve the motion for summary judgment without considering these facts and the corresponding objections.

The Plaintiff did not designate an expert to testify to the medical standard of care or the alleged breach thereof. In contrast, the Defendant designated two experts. The first expert will testify to nursing standards of care and the lack of a breach thereof in this case. The second expert will testify on the lack of causation.

## DISCUSSION

### I. Standard of Review

In a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). The Court gives the party opposing summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22. If the record reveals no genuine issue of material fact then summary judgment is proper. *Id.* ¶ 6, 784 A.2d at 21. A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial. *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. short

A plaintiff facing summary judgment "must produce evidence that, if produced at trial would be sufficient to resist a motion for a judgment as a matter of law." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 7, 742 A.2d 933, 937-38. To do this, "the plaintiff must establish a prima facie case for each element of her cause of action." *Blake v. State*, 2005 ME 32, ¶ 4, 868 A.2d 234, 237 (quoting *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48, 52. Although this is true, this burden only arises after the defendant has specifically attacked the record evidence as an insufficient basis to meet an element of a claim. *Corey*, 1999 ME 196, ¶ 9, 742 A.2d at 938. Absent a defendant's

3

challenge, a plaintiff need not present written material evidence establishing other elements because a *prima facie* case for those elements is assumed. *Id.* (*citing Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996)).

## II. Necessity of Expert Testimony

Mercy Hospital argues that it is entitled to summary judgment in its favor because the Plaintiff has failed to produce any medical evidence establishing either 1) the requisite standard of care or 2) any alleged breach thereof.

In a professional negligence case, the plaintiff "must prove that the defendant had a duty to the plaintiff to conform to a certain standard of conduct and that a breach of that duty proximately caused the plaintiff's injury." *Welch v. McCarthy*, 677 A.2d 1066, 1069 (Me. 1996) (*citing Fisherman's Wharf Assocs. II v. Verrill & Dana*, 645 A.2d 1133, 1136 (Me. 1994)). In cases involving medical professional negligence (i.e. medical malpractice actions) "expert testimony is ordinarily required to establish the appropriate standard of medical care, that the defendant departed from that standard, and that the plaintiff's injury was proximately caused by the negligent conduct." *Welch*, 677 A.2d at 1069 (*citing Chasse v. Mazerolle*, 622 A.2d 1180, 1182 (Me. 1993)). However, there are certain "unusual circumstances" where the plaintiff is excused from presenting expert testimony. *Michaud v. Blue Hill Memorial Hosp.*, 2008 ME 29, ¶ 5, 942 A.2d 686, 688. Such circumstances involve "egregious mistreatment" such that "the negligence and harmful results are sufficiently obvious as to lie within common knowledge." *Cox v. Dela Cruz*, 406 A.2d 620, 622, n.1 (*quoting Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954).

The so-called "common knowledge" exception allows recovery without expert evidence where the negligence is so obvious that it does not require medical expertise. Maine cases relying on this exception range from a nurse who scalded a patient with

4

hot water, *Mills v. Richardson*, 126 Me. 244, 137 A. 689 (1927), to a pharmacist who incorrectly filled a prescription and failed to follow the proper safety measures, *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 31, 748 A.2d 961, 972, to a doctor who failed to wash his hands or instruments and caused an infection, *Patten v. Milam*, 480 A.2d 774 (Me. 1984). In certain cases the plaintiff presented some expert testimony, for example on the standard of care, but then relied on the "common knowledge" exception to prove either a breach of duty or causation. *See e.g., Seven Tree Manor v. Kallberg*, 1997 ME 10, ¶ 9, 688 A.2d 916, 918 (applying the "common knowledge" exception to professional engineers and holding that the trial court correctly applied it after the jury heard expert testimony only related to the standard of care.). In other cases the standard of care is established by statute and then the plaintiff relied on the "common knowledge" exception to demonstrate a breach. *See e.g., Chasse v. Mazerolle*, 622 A.2d 1180 (Me. 1993) (holding that expert testimony was unnecessary where the undisputed evidence demonstrated that a physician did not comply with sterilization procedures mandated by statute).

Two Law Court cases are particularly relevant to the case at bar. In *Rice v. Sebasticook Valley Hosp.*, the Law Court held that the "common knowledge" exception applied in a negligence action against a hospital where the patient fell from a chair during the course of treatment. 487 A.2d 639, 640-41 (*citing Hamor v. Maine Coast Memorial Hospital*, 483 A.2d 718, 722 (Me. 1984); and *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979)). Expert testimony was not offered, nor was it required, on the standard of care or an alleged breach thereof in allowing the patient to sit in a chair. *Rice*, 487 A.2d at 640-41. The plaintiff in *Rice* nevertheless failed to establish that the hospital breached its duty of care. *Id.* at 640.

In *Forbes v. Osteopathic Hospital of Maine, Inc.*, the Law Court vacated the Superior Court's grant of summary judgment in favor of the defendant where the record disclosed that there was a genuine issue of material fact regarding whether the "common knowledge" exception applied. 552 A.2d 16, 17-18 (Me. 1988). The question presented at summary judgment in *Forbes* is identical to the case at bar (i.e. like Cucci, Forbes failed to designate a liability and causation expert in a medical malpractice case). However, the summary judgment motions were devoid of *any* supporting documents by either party. *Id.* at 17. Therefore, the Law Court ultimately rested its decision on the plaintiff's allegations, which set forth "specific facts to demonstrate a genuine issue of material fact as to whether the allegations of the hospital's negligence and the harmful results [were] sufficiently obvious as to be within common knowledge." *Id.* at 17-18. In sum, summary judgment was unavailable to the defendant since nothing on the record foreclosed the plaintiff from establishing the obvious nature of the alleged negligence. *Id.* at 18. However, the Court approaches the *Forbes* precedent with caution given its unique (and bare) summary judgment record.

Applying the foregoing legal principles, the Court turns to the case at bar. There is a factual dispute as to whether Langley struck Cucci's ankle with the IV pole. On the one hand, Cucci testified that Langley had the IV pole and in the next moment he felt it contact his ankle in such a way that it caused him to lose his balance. Cucci did not fall but he did have to tweak his body in such a way that allegedly caused the injuries complained of. On the other hand, Langley has no recollection of the IV pole ever coming into contact with Cucci's ankle. No doubt the procedure for ambulating a post-operative patient is the result of medical judgments, as evidenced by both the Fusion Plan of Care and the Physical Therapy Plan of Care. However, just as no specialized training is necessary to know not to use scalding hot water on a patient, or not to

distribute the wrong medication, or to use proper sanitary procedures, no specialized training is required to know that a CNA must take reasonable precautions to avoid striking a patient with an IV pole while assisting in ambulation shortly after back surgery.

At trial there is risk that Cucci case may ultimately suffer the same fate as the plaintiff in *Rice v. Sebasticook Valley Hosp.*, who was unable to prove all elements of the medical malpractice claim by a preponderance of evidence. Specifically, Cucci's only expert is the treating physician who is not expected to testify to the standard of care or any breach thereof. Plaintiff's reliance on the "common knowledge" exception will be controverted by two defense experts that will testify directly to the standard of care and the lack of any breach thereof. However, an evaluation of the weight of evidence is a matter for trial and not for the Court at summary judgment. If the standard of care to seat a patient in a chair to prevent a fall is sufficiently obvious to lie within the "common knowledge exception" then it is similarly obvious that a CNA must take reasonable precautions not to obstruct a patient's post-surgery walk. *See Rice v. Sebasticook Valley Hosp.*, 552 A.2d 16 (Me. 1988).

Therefore, the entry is:

Defendant Mercy Hospital's Motion for Summary Judgment is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _21st_ day of _November_, 2008.

_____
Robert E. Crowley
Justice, Superior Court

7

: COURTS
ıd County
ɔx 287
e 04112-0287

DANIEL RAPAPORT ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

COURTS
d County
ʌ 287
ə 04112-0287

MARTICA DOUGLAS ESQ
DOUGLAS DENHAM BUCCINA & ERNST
PO BOX 7108
PORTLAND ME 04112-7108