1999 ME 196

**Susan W. COREY**

v.

**NORMAN, HANSON & DETROY et al.**

Supreme Judicial Court of Maine.

Argued Feb. 1, 1999.

Decided Dec. 28, 1999.

934

Michael J. Waxman, Portland, for plaintiff.

Harrison L. Richardson, (orally), John S. Whitman, Paul R. Johnson, Richardson, Whitman, Large & Badger, P.C., (for Norman, Hanson & DeTroy) James M. Bowie, (orally), Thompson & Bowie, Portland, (for Dawson Smith Purvis & Bassett) for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1]  Susan W. Corey appeals from a summary judgment (Cumberland County, *Cole J.*) entered in favor of the defendants. The court concluded that Susan failed to establish the necessary elements to establish malpractice in her action brought against the law firm of Norman, Hanson & DeTroy and the accounting firm of Dawson, Smith, Purvis & Bassett, P.A. (referred to collectively as NH & D).  Susan contends that the trial court erred in basing its decision to grant a summary judgment on what it concluded was an insufficient statement of material facts filed by Susan pursuant to M.R. Civ. P. 7(d)(2). Susan also appeals from an order (*Saufley, J.*) requiring her attorney to return to the attorney for NH & D a document that the trial court found to be privileged.  She contends that the court erred in finding that an inadvertent disclosure of a privileged document does not constitute a waiver of the attorney-client privilege.  We affirm both the summary judgment and the court's order regarding the privileged document.

[¶ 2]  In the spring of 1995, Susan retained attorney Peter DeTroy of NH & D to represent her in divorce proceedings against her then husband John B. Corey, a dentist specializing in periodontics.  DeTroy hired Dawson, Smith, Purvis & Bassett, P.A., certified public accountants, to value assets of the marital estate and to assist in distinguishing between marital

and nonmarital property for purposes of the divorce. The parties agreed that John Corey's dental practice was marital property. DeTroy stipulated to the $37,700 valuation of the dental practice proposed by John's attorney. No formal appraisal of the dental practice was conducted by DeTroy or the accountants he hired. The divorce was finalized in March of 1996. In the divorce judgment, the stipulated value of the dental practice was accepted by the court [1] and the practice was set aside to John. More than $1.6 million in marital property was awarded to Susan. In addition, John was ordered to pay his former wife alimony in excess of $300,000 over ten years.

[¶ 3] In January of 1997, Susan filed a complaint in the Superior Court charging NH & D with professional negligence. Susan alleged that NH & D had a duty to represent her "with reasonable care, skill and diligence possessed and exercised by the ordinary attorney in similar circumstances" and a duty to maximize her property distribution by "diligently consider[ing] and valu[ing] all marital assets." According to Susan, NH & D breached that duty by failing to obtain an independent valuation and by stipulating to the $37,700 valuation of the dental practice. This breach, Susan alleges, "caused the dental practice, a valuable marital asset, to be seriously undervalued," thereby resulting in a property distribution to Susan "of substantially less value than that to which she was entitled." The $37,700 figure to which NH & D stipulated was the value of the dental and business equipment less debt, and did not account for the good will of the dental practice, which, Susan contends, has a substantial value.

[¶ 4] After extensive discovery, NH & D filed a motion for a summary judgment, contending:

> As a matter of law, [Susan Corey] cannot prove any set of facts under which [NH & D] may be liable to [Susan],

because [Susan] has no evidence that any act or omission by [NH & D] was the proximate cause of any alleged damage to [Susan].[2]

In its M.R. Civ. P. 7(d)(1) statement of material facts supporting its motion for a summary judgment, NH & D included excerpts from the deposition testimony of Susan's designated legal expert, Robert Nadeau, that reflected his reluctance to offer an opinion on proximate causation. Paragraphs 4 and 5 of NH & D's Rule 7(d)(1) statement read as follows:

> 4. Plaintiff has designated Robert M.A. Nadeau, Esq. as an expert in this case. Mr. Nadeau is an attorney....
>
> 5. Mr. Nadeau was specifically asked if he was prepared to testify as to issues of proximate cause. He clearly and unequivocally stated that he was not:
>
> Q: When you expressed the opinion that has now been refined, I guess I would describe it—when you express that opinion in court, do you also intend to express an opinion as to whether or not the claimed failure to do whatever it is you say my client [Defendant NH & D] should have done was the proximate cause of anything?
>
> A: I can't make a conclusion with respect to proximate cause. That is a conclusion for the judge or the jury to make when they hear all the facts. Again, I am not privy to all the facts.
>
> ....
>
> Q: You're not going to offer any opinion as to whether or not some conduct on the part of [Defendant NH & D] was the proximate cause of some damage to Mrs. Corey?
>
> A: I am not aware that I have been asked to do that, no.

[¶ 5] In her opposition to NH & D's motion for a summary judgment, submitted pursuant to Rule 7(d)(2), Susan relied

---

1. The court actually valued the dental practice at $37,670.

2. Dawson, Smith, Purvis & Basset, P.A. joined in the motion for summary judgment.

on different excerpts from Nadeau's deposition testimony:

Q: Have you ... ever been asked by Mr. Waxman to evaluate the settlement proposal that was advanced but ultimately not accepted by Ms. Corey?

A: I may—I believe I was asked to offer an opinion as to causation based on certain hypothetical information presented to me by him, but I was, to the best of my recollection, never asked to make any kind of comparisons as to—or concerning the actual settlement versus alternatives in the absence of the hypotheticals presented to me.

Q: What hypothetical was presented to you?

. . . .

Q: All right. Well, you take your time [in finding the letter that presented the hypothetical, if there was one] because I want to know what if anything, you were asked to assume in the hypothetical and then we'll move from there under what conclusion, if any, you expressed.

. . . .

Q: As best you can recall [not finding the hypothetical in the correspondence], describe the hypothesis that you believe was presented to you.

A: I believe it was as simple as something to the effect of assuming that Attorney DeTroy had failed to advise Ms. Corey regarding the appropriateness of obtaining a business valuation of the dental practice and, in particular, the value of goodwill of the practice and assuming that we can establish through an expert witness that that omission had significant value to Ms. Corey, would you have an opinion regarding whether such failure to advise the client to obtain a complete business valuation of the practice would be the proximate cause of whatever losses his expert could establish . . . .

. . . .

Q: Basically the hypothesis was if he had gotten one, would it have made a difference?

A: Assuming that he could establish through an expert—

Q: Right.

A: —there was an economic loss. It was basically a causation type.

Q: And your answer to that was you couldn't express that opinion, right?

A: No. My answer was assuming that you could establish there would have been a loss, that, yes, I could—I would offer an opinion that failure to advise a client—you could also establish that there was, in fact, such a failure to advise—proximately caused that loss.

[¶ 6] The Superior Court entered a summary judgment in favor of NH & D based on Susan's failure to present sufficient evidence of any loss that was proximately caused by negligence on the part of NH & D. Therefore, the court concluded, her claim for damages was overly speculative. Susan has appealed from that judgment.

## I. SUMMARY JUDGMENT

[¶ 7] We review the entry of a summary judgment "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926, *quoted in Denman v. Peoples Heritage Bank, Inc.*, 1998 ME 12, ¶ 3, 704 A.2d 411, 413. A summary judgment is properly entered if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 7(d) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.

M.R. Civ. P. 56(c). "To survive a defendant's motion for a summary judgment, a

plaintiff must produce evidence that, if produced at trial would be sufficient to resist a motion for a judgment as a matter of law." *Rodrigue,* 1997 ME 99, ¶ 8, 694 A.2d at 926, *quoted in Prescott v. State Tax Assessor,* 1998 ME 250, ¶ 4, 721 A.2d 169, 171.

■■■ [¶ 8] M.R. Civ. P. 7(d)(1) requires that "upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts, supported by appropriate record references, as to which the moving party contends there is no genuine issue to be tried." *Id.* Likewise, Rule 7(d)(2) requires a party opposing a summary judgment to file "a separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried." [3] *See* M.R. Civ. P. 7(d)(2). In determining whether to grant or deny a motion for a summary judgment, the trial court "is to consider *only* the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." *Handy Boat Serv., Inc. v. Professional Servs., Inc.,* 1998 ME 134, ¶ 12, 711 A.2d 1306, 1310, *quoted in Prescott,* 1998 ME 250, ¶ 5, 721 A.2d at 172. The statement of material facts requirement of Rule 7(d) is designed to force litigants to narrowly frame their summary judgment contentions, enabling the court to decide a summary judgment motion without engaging in an exhaustive review of the record. *See Gerrity Co., Inc. v. Lake Arrowhead Corp.,* 609 A.2d 293, 295 (Me.1992); *see also Maine Mut. Fire Ins. Co. v. Grant,* 674 A.2d 503, 505 n. 2 (Me.1996) (citing M.R.

Civ. P. 7 advisory committee's note to 1990 amend., Me. Rptr., 563–575 A.2d LXXIII).

■■■ [¶ 9] To defeat NH & D's motion for a summary judgment, Susan was required to include in her Rule 7(d)(2) statement of material facts references to the record to establish the existence of any element of her cause of action for which she bears the burden of proof at trial and for which NH & D asserted there is no genuine issue of material fact. We have stated generally that to resist a summary judgment motion "a plaintiff must establish a *prima facie* case for each element of his cause of action." *Barnes v. Zappia,* 658 A.2d 1086, 1089 (Me.1995). By that statement, however, we do not intend that a plaintiff must establish in the written material filed in opposition to a motion for summary judgment a prima facie case for those elements of the cause of action not challenged by the defendant. *Cf. Binette v. Dyer Library Ass'n,* 688 A.2d 898, 903 (Me.1996) (holding that where defendant moved for a summary judgment and did not contest the first element that plaintiff was required to prove, it was assumed that the plaintiff had established a prima facie case for that element). A defendant moving for a summary judgment has the burden to assert those elements of the cause of action for which the defendant contends there is no genuine issue to be tried. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). [4]

■ [¶ 10] To prove attorney malpractice, a plaintiff must show: (1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard

---

3. Rule 7(d)(2) further provides:
   All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party. M.R. Civ. P. 7(d)(2); *see also Guiggey v. Bombardier,* 615 A.2d 1169, 1171 (Me.1992).

4. In *Celotex,* the Supreme Court was interpreting the requirements of Fed.R.Civ.P. 56(c). *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Our summary judgment rule is almost identical, but with the additional requirements in M.R. Civ. P. 7(d), which make clearer the burden of a party moving for a summary judgment. *See* M.R. Civ. P. 56.

of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff. *See Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.,* 1998 ME 210, ¶ 12, 718 A.2d 186, 190 (1998). NH & D's Rule 7(d)(1) statement was directed at the lack of a genuine issue of material fact in one element of Susan's legal malpractice claim, namely, proximate causation. Accordingly, in order to avoid a summary judgment being entered against her on NH & D's motion, Susan was required to establish a prima facie case only on proximate causation. In granting a summary judgment in favor of NH & D the trial court concluded that Susan failed to present sufficient evidence of loss proximately caused by NH & D's conduct. It based that conclusion, in part, on the failure of Susan to include in her Rule 7(d)(2) statement of material facts any evidence regarding the good will value of the dental practice of John Corey. Susan concedes that her 7(d)(2) statement does not contain direct evidence of the value of the dental practice, but contends that because the focus of NH & D's Rule 7(d)(1) statement of material facts in support of its motion for a summary judgment was proximate causation as opposed to the value of the dental practice itself, her response, directed at proximate causation, was sufficient.

[¶ 11] We agree with Susan that standing alone, the absence of direct evidence of the valuation of the good will of John's dental practice in Susan's Rule 7(d)(2) statement of material facts does not entitle NH & D to a summary judgment. NH & D raises questions about the validity of the appraisal of the dental practice by Susan's expert, and contends that there was no negligence in accepting the value placed on the practice by John. Its Rule 7(d)(1) statement of material facts, however, is not grounded on Susan's failure to produce any evidence that the good will of a dental practice can have substantial value,[5] but rather is focused on proximate causation, and whether Susan could establish that any negligence NH & D may have committed proximately caused her any loss. Thus, the absence of direct evidence of the value of John's dental practice in Susan's Rule 7(d)(2) statement of material facts is not in and of itself sufficient justification for the entry of a summary judgment.

[¶ 12] That does not end our inquiry, however. NH & D contends that it is entitled to a summary judgment because Susan has not presented sufficient evidence of proximate causation, which is essential to proving professional negligence. NH & D's Rule 7(d)(1) statement relies on the initial deposition testimony of Susan's legal expert, and his statement that he could not testify as to proximate causation. In Nadeau's further deposition testimony, however, included in Susan's responsive Rule 7(d)(2) statement, Nadeau asserts that he is prepared to testify as to proximate causation. Nadeau testified that if someone else could establish Susan's loss, he would testify that such loss was proximately caused by NH & D's failure to advise Susan to evaluate the good will of the dental practice. Nadeau does not in any way identify or describe the loss. Even viewing Nadeau's statement most favorably to Corey, as we must do, *see Denman,* 1998 ME 12, ¶ 3, 704 A.2d at 413, it

---

5. We have not determined whether the good will of a professional practice may be marital property subject to division on divorce. *See Lord v. Lord,* 454 A.2d 830, 833 nn. 3–4 (Me. 1983). The record does contain evidence concerning the value of the dental practice. Susan's expert gave an opinion that the value of the dental practice was in excess of $600,-000. That value, however, is based on the practice as it existed at the end of 1994. At that time the practice consisted of two dentists with offices in South Portland and Wa-terville. As NH & D points out, that partnership has since dissolved, and at the time of the divorce, John was practicing alone out of the South Portland office. Although it is apparent that Susan's expert would be required to update his opinion as to the current value of John's practice, and that he would be required to convince the fact finder that his testimony was credible, it is clear that the expert was prepared to testify that the good will of a dental practice can have considerable value.

is insufficient to establish proximate causation in the context of this case.

[¶ 13] In order to avoid a summary judgment on NH & D's challenge to the sufficiency of Corey's evidence regarding proximate causation. Susan must show through expert testimony that the divorce judgment would have been more favorable to Susan if the value of the dental practice had been shown to be higher than the $37,700 agreed on by NH & D, *i.e.*, that NH & D's negligence resulted in the divorce judgment being less favorable to her, *see Schneider v. Richardson* 411 A.2d 656, 658–59 (Me.1979) (discussing requirement that plaintiff prove a case within a case in order to recover for legal malpractice in divorce representation).

[¶ 14] Susan's Rule 7(d)(2) statement points to no admissible evidence to prove it more likely than not that the divorce judgment would have been more favorable to Susan if the value of the dental practice was shown to exceed the $37,700 value agreed on by NH & D. Nadeau makes a general statement that he would testify about proximate cause, but he does not offer an opinion that the trial court would have accepted the higher value of the dental practice, or that if the court accepted a higher value, it would have awarded any part of the increase to Susan, or that if it did award a part of the increase to Susan, such increase would not be offset by a less favorable award of alimony. Such evidence is essential to Susan's case, *see Marshak v. Ballesteros*, 72 Cal.App.4th 1514, 86 Cal.Rptr.2d 1, 3–4 (1999) (not enough for plaintiff to allege possibility of a better outcome, but must prove what the better outcome would have been). The Superior Court correctly concluded that the lack of expert evidence in regard to a different outcome absent NH & D's negligence makes "the link between [the negligent act] and the alleged damage ... overly speculative." *See also Steeves*, 1998 ME 210, ¶ 13, 718 A.2d at 190. Without a showing that the divorce judgment would have been different, the factfinder would be compelled to speculate as to proximate causation, and at a trial NH & D would be entitled to a judgment as a matter of law. *See Webb v. Haas*, 1999 ME 74, ¶ 20, 728 A.2d 1261, 1267. If at a trial NH & D would be entitled to a judgment as a matter of law, it is entitled to the entry of a summary judgment in its favor. *See id.* ¶ 18, 728 A.2d at 1267. *Prescott*, 1998 ME 250, ¶ 4, 721 A.2d at 171.

## II. ATTORNEY–CLIENT PRIVILEGE

[¶ 15] On February 4, 1997, Michael Waxman, Susan's attorney, went to the office of Harrison L. Richardson, the attorney for NH & D, to view NH & D's file regarding the Corey divorce. Richardson was not in his office, but he had told his secretary to photocopy any documents Waxman wished to have. Inadvertently placed in the boxes of documents available for Waxman's review was a memorandum with the phrase "CONFIDENTIAL AND LEGALLY PRIVILEGED" written at the top of the page. The memorandum is a summary of a telephone conference between Richardson and DeTroy, the attorney who represented Susan in her divorce. Waxman requested and received a copy of the document from a firm secretary without the knowledge of Richardson. The secretary contacted Waxman later that day to request the return of the copy of the document. Waxman refused that request, believing that he did not have an obligation to return the document because the attorney-client privilege was waived by the inadvertent disclosure of the document. He then informed Richardson, in writing, of his receipt of the document.

[¶ 16] The Superior Court granted NH & D's motion for a protective order and required Waxman to return his copy of the memorandum to Richardson and to make no further use of it. An appeal of that ruling is now before us.

[¶ 17] "A party aggrieved by a discovery order 'must show both that the

trial judge committed error in the discovery ruling despite the considerable discretion vested in the judge ... and that the discovery order affected the outcome of the action to his prejudice.' " *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 509 (Me.1996) (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 26.18b at 212 (2d ed. Supp.1981)).

▮▮ [¶ 18] The purpose of the attorney-client privilege "is to encourage clients to make full disclosure to their attorneys," *see Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice," *see Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Any rule regarding inadvertent disclosures must uphold this underlying purpose.

▮▮▮ [¶ 19] In ordering the return of the inadvertently disclosed privileged document, the trial court, adopting the rule first established in *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951 (N.D.Ill.1982), concluded:

> A truly inadvertent disclosure cannot and does not constitute a waiver of the attorney-client privilege. The issue for counsel and the court upon a claim of inadvertent disclosure must be whether the disclosure was actually inadvertent, that is, whether there was intent and authority for the disclosure.... If receiving counsel understands the disclosure to have been inadvertent, no waiver will have occurred. Unless receiving counsel has a reasonable belief that the disclosure was authorized by the client and intended by the attorney, the receiving attorney should return the document and make no further use of it.

See *id.* at 954–55. We agree with the Superior Court and its adoption of the common sense rule set out in *Mendenhall.* See also *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 21 (D.Neb.1983); *Connecticut Mut. Life Ins. Co. v. Shields*, 18 F.R.D. 448, 451 (S.D.N.Y.1955). Underlying this rule is the notion that the client holds the privilege, and that only the client, or the client's attorney acting with the client's express authority, can waive the privilege. See *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La.1987). The rule focuses on the intent of the parties to determine whether the disclosure was indeed inadvertent. See *Berg Elecs., Inc., v. Molex, Inc.*, 875 F.Supp. 261, 263 (D.Del.1995). The *Mendenhall* court explained that "if we are serious about the attorney-client privilege and its relation to the *client's* welfare, we should require more than ... negligence by *counsel* before the client can be deemed to have given up the privilege." *Mendenhall*, 531 F.Supp. at 955.

[¶ 20] The rule adopted by the Superior Court, which we now adopt, is consistent with the rule adopted by the American Bar Association's committee on Ethics and Professional Responsibility:

> A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 92–368 (1992); *see also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (1994).[6]

---

**6.** The Maine Professional Ethics Commission of the Board of Overseers of the Bar, in Opinion No. 146, has distinguished between situations involving active participation of the receiving lawyer in the receipt of the documents and those involving the innocent receipt of such documents through opposing counsel's inadvertence, and concluded that the Bar Rules did not prohibit the use of inadvertently disclosed privileged materials.

[¶ 21] We agree with the Superior Court's rejection of the alternate approaches followed by other courts. In one line of cases, an inadvertent disclosure of a privileged document can amount to a waiver of the privilege if the client and the client's attorney did not take adequate steps to prevent the disclosure. *See Gray v. Bicknell,* 86 F.3d 1472, 1483–84 (8th Cir.1996); *see also Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 331–32 (N.D.Cal.1985). The *Gray* approach has been criticized as creating an uncertain, unpredictable privilege, dependent on the proof of too many factors concerning the adequacy of the steps taken to prevent disclosure. *See Berg Elecs., Inc. v. Molex, Inc.,* 875 F.Supp. 261, 262–63 (D.Del.1995). Another line of cases concludes that all inadvertent disclosures of documents constitute a waiver of the privilege because the information is no longer confidential. *See International Digital Sys. Corp. v. Digital Equip. Corp.,* 120 F.R.D. 445, 449–50 (D.Mass.1988); 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2325(3) (John T. McNaughton ed., 1961). Although this approach has been adopted by the United States District Court for the District of Maine, *see Federal Deposit Ins. Corp. v. Singh,* 140 F.R.D. 252, 253 (D.Me. 1992), it takes away from the client the ability to control when the privilege is waived and discourages communication between attorneys and clients.

[¶ 22] The Superior Court was correct in concluding that there was no waiver of the privilege, and in ordering the return of the document and prohibiting the disclosure of its contents.

The entry is:

Order regarding the privileged document is affirmed; judgment affirmed.

Me. Prof. Ethics Comm'n, Op. No. 146 (Dec.     9, 1994).