STATE OF MAINE
COUNTY OF CUMBERLAND

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-006

REC-CUM - 7/20/2000

ROBERT BERNSTEIN,           )
                            )
        Plaintiff,          )
                            )     ORDER ON DEFENDANTS' MOTIONS
v.                          )     TO STRIKE EXPERT WITNESS
                            )     AFFIDAVITS AND MOTION FOR
JOEL C. MARTIN and          )     SUMMARY JUDGMENT
PETRUCCELLI & MARTIN,       )
                            )
        Defendants.         )


FACTUAL BACKGROUND

In 1992, Plaintiff Robert Bernstein ("Bernstein") and his brother Mark Bernstein ("Mark") were co-owners of Portland Airport Limousine Co., Inc. ("PALCO"). DSMF ¶1. The company was having financial difficulties and Key Bank threatened to foreclose on the mortgage on PALCO's real estate. DSMF ¶2. The brothers had a falling out and determined that one would have to buy the other out of the business. DSMF ¶6.

Plaintiff hired Defendant Joel Martin ("Martin") to serve as his attorney to determine Plaintiff's rights in PALCO. The Bernstein brothers with their attorneys devised an agreement ("Agreement") that was executed on January 11, 1993. DSMF ¶9. Under the agreement, Plaintiff's home was released as security on the mortgage, Mark agreed to pay Plaintiff's share of a payment due Key Bank, and Plaintiff would be paid $27,500 immediately and $90,000 more over the course of two years in monthly installments and $59,000 the third year in monthly installments. DSMF

¶9-10. Additionally, Plaintiff would be free of any debt PALCO would later incur. DSMF ¶10.

Due to Plaintiff's knowledge of PALCO's financially precarious situation, Plaintiff understood that PALCO might go bankrupt and that he might not receive payments due him. DSMF ¶10. The Agreement, Paragraph 11 (DSMF ¶11), provided that if PALCO defaulted for 90 days on a payment owed to Robert, or if it filed a voluntary petition for protection from creditors, or an involuntary bankruptcy petition is filed against PALCO, that Mark shall "cause to be conveyed to Robert, upon the request of Robert, Mark's common stock in PALCO and resign as an officer and director of PALCO." Paragraph 11 further provided that Mark's common stock was to be held in escrow "pursuant to the Escrow Agreement attached as Exhibit A." The stock was never pledged and the resignation was never placed in Escrow. PSMF ¶5.

The parties dispute whether the Escrow Agreement was signed as part of the closing, and neither party has been able to locate the original Escrow Agreement. DSMF ¶14. It contained substantially the same provisions regarding Robert's remedies upon default, except it also included a formal notice requirement. DSMF ¶12. Section 4 of the Escrow Agreement stated

> Notice of any such default shall be in writing addressed to the Escrow Agent and to Mark and PALCO. If neither Mark or PALCO contests the notice of default within four (4) business days following the receipt thereof, Escrow Agent shall transfer to Robert all of the escrowed stock forthwith."

Section 5 of the Escrow Agreement stated

Any contest of Mark or PALCO of the notice of default shall be in writing, delivered to the Escrow Agent and to Robert, shall state the grounds therefor, and shall supply all relevant supporting documentation. The Escrow Agent shall determine whether to convey or retain the stock based on the submissions by the parties.

In January of 1993, following the closing, Plaintiff terminated Martin's employment as his attorney. DSMF ¶15.

At the end of 1993/beginning of 1994, PALCO obtained refinancing through Fleet Bank and Plaintiff agreed to enter into a subordination agreement with Fleet. DSMF ¶16. In early Fall 1995, Fleet ordered PALCO to stop making payments to Plaintiff. DSMF ¶18. PALCO filed for Chapter 11 Bankruptcy on December 22, 1995. DSMF ¶20. At the time of the filing, PALCO had paid Plaintiff on 3 of 4 promissory notes, and half of the fourth. DSMF ¶21. The bankruptcy proceedings included working out a payment schedule to allow immediate payments to plaintiff on the last note. DSMF ¶2.

On July 25, 1997, Plaintiff's new attorney (Steven Cope) wrote to Mark's attorney, stating

> As you know, Paragraph 11 of the January 15, 1993 agreement between our respective clients and Mark effectuates a stock pledge which is exercisable inasmuch as there is an incurable default. My client intends to exercise the stock pledge which requires Mark to deliver all the shares of stock to Robert and resign from all his capacities in the corporation forthwith. I will be contacting Mark directly in this regard.

On August 8, 1997, Mark's attorney wrote back, stating

> The debt to Robert will be fully paid together with all attorney's fees in a relatively short period of time. Rather than get into disputes over stock pledges, it may be more prudent to simply see whether the debt

3

is entirely discharged, thereby mooting any issues with respect to a pledge. If you feel a necessity to proceed in some other manner, I would appreciate it if you could give me a call and we could discuss it rather than get into costly and unnecessary disputes.

DSMF ¶26.

PALCO was in reorganization for a year. All of PALCO's creditors, including Plaintiff, were paid 100% of what they were owed. DSMF ¶29.

Plaintiff alleges that Martin negligently breached the duty of care owed to him (Count I), by failing to have the Escrow Agreement properly executed at the time of the closing which resulted in Plaintiff being an unsecured rather than a perfected secured creditor of PALCO. Specifically, Plaintiff alleges that Defendants failed to complete negotiations for and execution of the Escrow Agreement, to complete the stock pledge and resignation, failed to document and preserve records, to perfect Plaintiff's secured rights and to devise appropriate mechanisms to enforce Plaintiff's rights. PSMF ¶3. Count II is for Professional Negligence against Martin, for violating the Maine Bar Rules and its Code of Professional Responsibility (Rule 3.6) by failing to use reasonable care and skill, failing to attend to Plaintiff's needs punctually, and by neglecting the case. Count III alleges breach of a contract to provide legal services, in that Martin breached an implied covenant to provide the tasks reasonably and skillfully and without negligence. Count IV alleges vicarious liability against Defendant Petruccelli & Martin.

Defendants moved for summary judgment, arguing that Plaintiff cannot meet his burden to make a prima facie case of professional negligence. Primarily,

4

Defendants attack Plaintiff's ability to prove that Martin's actions proximately caused the Plaintiff a loss. In opposition to the Motion for Summary Judgment, Plaintiff submitted two affidavits of ostensible expert testimony. In their reply, Defendants objected to the court's consideration of the two affidavits and moved to strike them. The motions will be addressed in turn.

## I.    BROWN AFFIDAVIT

Plaintiff submitted the affidavit of Barry Brown, an expert purportedly qualified to testify as to the tax ramifications of the Agreement. Defendants moved to strike Brown's affidavit on several bases. Brown was never designated as an expert witness, despite Defendants' interrogatories requesting expert identities and the court's pretrial order of February 11, 1999. Discovery on this case closed on December 1, 1999, and neither party moved for extension of that date. The parties participated in a trial management conference on April 24, 2000, at which no mention was made of Brown. Defendants argue that the Plaintiff's failure to designate Brown as an expert witness seriously prejudices them.

In response to Defendants' motion to strike Brown's affidavit, Plaintiff responds that Defendants have not shown prejudice, that the court could re-open the discovery period to allow the defendants to depose Brown and that Brown was merely substituted for another witness who had been designated. These arguments are entirely without merit.

The Law Court has emphasized the importance of compliance with the

discovery rules. <u>See</u> <u>Employee Staffing of Am. v. Travelers Ins. Co.</u>, 674 A.2d 506, 508 (Me. 1996). In their interrogatories, Defendants did ask Plaintiff (pursuant to M.R. Civ. P. 26(b)) about the identity of witnesses to testify, as well as the subject matter on which they will testify. Brown was not listed in Plaintiff's answers. M.R. Civ. P. 26(e) makes mandatory the supplementation of such answers, and Brown was never included in any supplemental answer. Contrary to Plaintiff's assertion, it is important to know who the expert is that will be testifying as to certain matters. If the party against whom the testimony will be offered does not know the identity of the witness, that party is prejudiced. It may not depose the witness, may not find its own expert to refute the testimony of that witness, and may not research the expert's credentials for use on impeachment. For instance, in <u>Pitt v. Frawley</u>, 1999 ME 5, ¶¶6-9, 722 A.2d 358, 360-61, the Law Court held that it was not error for the Superior Court to prohibit testimony by an expert who had not been designated pursuant to M.R. Civ. P. 26(b). The court reasoned that the defendants had been prejudiced because their ignorance as to the witness' testimony affected their decision on how to proceed with their case.

This court's consideration of the Brown affidavit would result in unfair prejudice and surprise to the Defendants. Therefore, the Motion to Strike is granted.

## II. SCHKLAIR AFFIDAVIT

In contrast to Brown, Plaintiff did name Barry Schklair as an expert in his response to Defendants' interrogatories, and in its expert witness designation,

pursuant to the court's pretrial order and M.R. Civ. P. 26, dated March 27, 1999. Additionally, Plaintiff's interrogatory response stated that Schklair would be used for testimony on "the appropriate documentation and perfection of secured rights, and the ramifications of failures to document and perfect such rights appropriately." See Plaintiff's Answer to Defendants' Interrogatory #18. Defendants deposed Schklair on November 8, 1999.

To prepare for the deposition, Schklair reviewed the Agreement and the Escrow Agreement. Schklair Dep. at 11. At the deposition, Schklair testified, in response to a question asking him whether he had formulated an opinion about causation, that "I really can't because I don't know all of the facts." When asked whether he had an opinion regarding the existence of a default as defined in paragraph 11, Schklair answered that he had not. Schklair Dep. at 20. He also stated that Plaintiff could have proceeded against Mark for specific performance but that the task would have been "burdensome." Schklair Dep. at 24. After Schklair was deposed, Plaintiff did not, in any way, supplement his testimony as required by M.R. Civ. P. 26(e)[1].

---

[1]     **Supplementation of Responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, *except as follows:*

   (1)     A party is under a duty seasonably to supplement the response with respect to any question directly addressed to ...

   . . .

      (B)     the identity of each person expected to be called as an expert witness at trial, the *subject matter on which the person is expected to testify, and the substance of the person's testimony.*

(emphasis added)

Discovery in this case ended on December 1, 1999. Schklair's affidavit was filed in response to Defendants' motion for summary judgment, on dated May 22, 2000. In his affidavit, Schklair formulated several new or different opinions from those he put forth at his deposition. Specifically, Defendants objected to paragraphs 9-19 of the affidavit. Those paragraphs included the following opinions:

It would have been simple for Plaintiff to assert control over PALCO had there been a signed Escrow Agreement and had the stock been held in escrow... (Paragraph 9)

It was impossible to enforce an agreement that was unsigned and whose terms where unclear... if nothing else, the litigation would have been very expensive. It was error for the Defendants not to consider tax ramifications... (Paragraph 9)

Plaintiff's forced liquidation of his IRA Accounts in 1996 was a direct and proximate result of the Defendants' negligence in that [Plaintiff] at that time had no effective legal leverage to elicit payments and compliance from PALCO... (Paragraph 11)

Without having the stock in escrow, Plaintiff was powerless to gain control of his business. (Paragraph 12)

If the shares had been properly pledged, the shares would have routinely been turned over to Plaintiff. (Paragraph 12)

The taxes cost him $17,436 and the loss of the business cost him $350,000. The loss in taxes and in Plaintiff's ability to take over the business were proximately caused by Defendants' negligence. (Paragraph 13)

Demand under the Agreement would have been ineffective since Plaintiff was an unsecured creditor. Plaintiff would have had a "cake-walk" in the bankruptcy forum for re-possession of the business. (Paragraph 16)

In Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc., 707 A.2d 1311, 1389, 1998 ME 53 at ¶¶19-23, the Law Court held that surprise testimony typically

8

given by an expert resulted in unjustifiable prejudice to the defendant because the witness had not been designated as an expert. The defendant "had no reason to anticipate that the content of [the expert's] testimony would include precise profitability projections developed after the litigation had commenced ... [defendant] reasonably could have concluded that his testimony would be limited ... [the surprise testimony] left [defendant] with no time to formulate a meaningful cross-examination with respect to the... lost profits." The Chrysler reasoning can be applied with equal force to this case.

Furthermore, courts in other jurisdictions have recognized the unfairness created by conduct like Plaintiff's. In Green v. Fleishman, D.P.M., 882 S.W.2d 219, 221-22 (Mo. Ct. App. 1994), the Missouri Court of Appeals affirmed the trial court's exclusion of an expert witness's testimony. At the expert's deposition, he had not reached an opinion concerning negligent care. By the time of trial, however, the witness had formulated a clear opinion. The court held that because the expert's proponent did not supplement the expert's testimony as mandated by the discovery rules, the trial testimony was properly excluded. The Illinois Court of Appeals faced the same issue in Bart v. Union Oil Co. of California, 540 N.E.2d 770, 773 (Ill. App. Ct. 1989). The expert testified at his deposition that he could not opine to a reasonable degree of medical certainty whether the decedent had endured any conscious pain and suffering prior to his death. At trial, however, the expert testified that the decedent may have survived the first explosion and suffered pain. The court excluded the trial testimony because the expert's testimony violated a

court rule prohibiting experts's trial testimony to be inconsistent with or to go beyond that adduced in discovery.

This court is vested with the power to sanction parties for their failure to comply with the discovery rules. See M.R. Civ. P. 16(h). At Schklair's deposition, he had not formulated an opinion regarding default or the proximate causation of any alleged negligence by the Defendants. Further, he stated that, while burdensome, Plaintiff could have sought his rights under the agreement despite the alleged failure to execute the Escrow Agreement. In his affidavit, his opinion regarding proximate causation became definitive and he asserted that it would have been "impossible" for Plaintiff to pursue his rights against Mark Bernstein. See Schklair Aff. at ¶¶9-11, 13, 18. The effect of the surprise on the Defendant is as damaging as it would have been at trial. Now, at the summary judgment stage, Defendant has nothing to remedy the effect of the surprise because discovery in this case is closed. Admitting Schklair's testimony would be prejudicial to Defendant. See Spickler v. York, 566 A.2d 1385, 1389 (Me. 1989). Therefore, paragraphs 9-19 of Schklair's affidavit will not be considered in deciding the motion for summary judgment.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  PROXIMATE CAUSATION

In order to comply with M.R. Civ. P. 7(d), a party opposing summary judgment must properly controvert the movant's statement of material facts ("SMF"). To do so, the opposing party must controvert the specific paragraphs of the

10

movant's SMF.  See Prescott v. State Tax Assessor, 1998 ME 250, 6, 721 A.2d 169, 172. Failure to properly controvert the movant's SMF results in those statements being deemed admitted.  Id.  Additional facts in the non-moving party's SMF may be considered if they are supported by appropriate record references.  See id.  The trial court is to consider only the portions of the record referred to in the Rule 7(d) statements.  Id. at ¶8.

"To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial would be sufficient to resist a motion for a judgment as a matter of law."  Corey v. Norman, Hanson & DeTroy, 1999 ME 196, ¶7, 742 A.2d at 937-38.  The non-movant has the burden of proof to "establish a prima facie case for each element of his cause of action."  Id., 1999 ME 196, ¶9, 742 A.2d at 938.

The elements of a prima facie case for professional malpractice are:

(1)     a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and
(2)     that the breach of that duty proximately caused an injury or loss to the plaintiff.

Id., 1999 ME 196, ¶10, 742 A.2d 933, 940.  The duty owed in this context is the exercise of the "degree of skill, care and diligence exercised by members of that same profession."  Fisherman's Wharf Assocs. II v. Verrill & Dana, 645 A.2d 1133, 1136 (Me. 1994).  Even if a Plaintiff establishes successfully establishes breach of a duty,

11

proximate cause[2] still must be proved. To prove proximate cause, the claimant must produce an expert witness to testify to the existence of proximate cause. Corey, 1999 ME 196, ¶14, 742 A.2d at 940.

In Corey, the Plaintiff alleged that the attorney she had hired to represent her in a divorce proceeding committed malpractice by miscalculating the value of her husband's business. The Law Court explicitly stated what she would have to show for her claim to survive summary judgment :

> Susan must show *through expert testimony* that the divorce judgment *would have been* more favorable to Susan if the value of the dental practice had been shown to be higher than the $37,700 agreed on...

(emphasis added). Where the link between the defendant's alleged negligence and plaintiff's alleged loss is overly speculative, summary judgment in favor of the defendant is appropriate. See Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C., 1998 ME 210, ¶13, 718 A.2d 186, 190.

In Corey, the plaintiff's statement of material facts did not state that the expert would testify as to the fact that she would have been successful in causing the trial court to accept the higher value of her husband's business, or that part of it would have been awarded to the plaintiff. See 1999 ME 196, ¶14, 742 A.2d at 940. That lack of expert evidence regarding a different outcome based on the defendants' negligence rendered the Plaintiff's claims speculative. Id. In this case, because the

---

2 Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred." Webb v. Haas, 1999 ME 74, ¶20, 728 A.2d 1261, 1267 (citations omitted). The Law Court has applied this definition to mean that "a negligent act is the proximate cause of an injury only if the actor's conduct is a substantial factor in bringing about the harm." Spickler v. York, 566 A.2d 1385, 1390 (Me. 1989) (citations omitted).

expert testimony regarding proximate causation has been stricken, the Plaintiff has produced no expert testimony to show proximate causation.

According to <u>Steeves</u> and <u>Corey</u>, the Law Court's most recent clear pronouncements on a plaintiff's burden, Plaintiff Bernstein would have to show that Defendants' conduct, not his own failure to assert his rights under the Agreement, caused his alleged losses. Phrased differently, at trial Plaintiff would have to prove that Defendants' alleged omission foreclosed the possibility of his exercising his rights. Because Plaintiff has not made such a showing, summary judgment for Defendants is proper.

The entry is

Defendants' Motion to Strike the Affidavit of Barry Brown is GRANTED. Defendants' Motion to Strike the Affidavit of Barry Schklair's paragraphs 9-19 is GRANTED. Defendants' Motion for Summary Judgment is GRANTED.

Dated: July 20, 2000

Robert E. Crowley
Justice, Superior Court

13

Date Filed ___1-6-99___ ___CUBMERLAND___ County    Docket No. ___CV99-6___

Action ___CONTRACT___

ROBERT BERNSTEIN                         JOEL C. MARTIN ESQ
                                         PETRUCELLI & MARTIN

                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| David Turesky Esq 772-7120<br>477 Congress Street<br>Portland, Maine 04101 | JAMES BOWIE, ESQ  774-2500 (Both)<br>PO BOX 4630, PORTLAND ME  04112 |

DONALD L. GARBRECHT
LAW LIBRARY

JUL 31 2000

| Date of Entry | |
|---|---|
| 1999<br>Jan. 7 | Received 1-6-99.<br>Complaint Summary Sheet filed. |
| "" "" | Complaint filed. |
| "" "" | $300.00 jury fee paid. |
| Jan. 20 | Received 01-14-99:<br>Defendants Joel C. Martin and petruccelli & Martin's Answer filed. |
| Jan. 20 | Received 01-19-99:<br>Summons and Acknowledgment of Receipt of Summons and Complaint filed.<br>Joel C. Martin, Esq. and Petrucelli & Martin to James Bowie, Esq. on<br>01-11-99. |
| Jan. 26 | Received 01-22-99:<br>Plaintiff's Case File Notice and Pretrial Scheduling Statement and<br>Jury Demand filed. |
| Feb. 17 | Received 2/12/99:<br>Expedited Pretrial Order filed. (Crowley, J)<br>Expedited Pretrial Order filed.  Discovery to be closed by 12/1/99<br>This case will be place on the Jury list for 30 days after close<br>of discovery.  This Order is incorporated into the docket by<br>reference at the specific direction of the court.<br>Copies mailed to David Turesky, Esq., James Bowie, Esq. on 2/17/99. |
| Feb. 22 | Received 2/18/99:<br>Defendants Joel Martin and Petruccelli & Martin's Notification of Discov<br>Service filed.<br>Request for Production of Documents Propounded to  Plaintiff Interrogato<br>Propounded to Plaintiff served on David Turesky, Esq on 2/17/99. |