STATE OF MAINE
KENNEBEC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2017-31

MSR RECYCLING LLC,
FRED BLACK PROPERTIES LLC,
and FRED BLACK

    Plaintiffs

**DECISION AND JUDGMENT**

V.

WEEKS AND HUTCHINS LLC,
and MATTHEW E. CLARK

    Defendants

## INTRODUCTION AND PROCEDURAL BACKGROUND

Before this Court for decision is the motion for summary judgment filed by Weeks and Hutchins, and Matthew E. Clark (collectively "Defendants"). This dispute involves an attorney malpractice claim against the Defendants by MSR Recycling LLC, Fred Black Properties, and Fred Black (collectively "Plaintiffs"). The Plaintiffs commenced this action on February 6, 2017, by filing a three-count complaint alleging that (1) Clark was negligent in failing to file a brief on behalf of Plaintiffs in a Rule 80B matter; (2) that Weeks and Hutchins is vicariously liable for Clark's negligence; and (3) that Clark acted, or omitted to act, with express or implied malice. On January 18, 2018, Defendants filed their Motion for Summary Judgment and the Plaintiffs timely opposed. Weeks and Hutchins has admitted vicarious liability. Oral argument on this motion was held on September 4, 2018.

The undisputed material facts are taken from the summary judgment record and are summarized below.

## FACTS

In January 2012 the Plaintiffs filed a site review application with the Town of Madison for approval of a so-called "feeder lot" which would essentially hold flattened old vehicles, scrap metals, and white goods[1] for a short period of time until the materials were transported to MSR's recycling facility in Winslow. After numerous hearings and meetings, the Madison Planning Board ("Board") approved the Plaintiffs' application on October 5, 2012. At these meetings and hearings, Fred Black testified that stoves, refrigerators, and scrap iron would be collected at the site before being loaded into trailers or containers destined for the Winslow facility. A large machine, called a Terex Fuchs material handler, was to be located outdoors on a concrete slab and would load flattened vehicles and the aforementioned white goods and scrap iron into the trailers and containers. After the Board's approval, neighbors to the feeder lot site appealed the Board's decision to the Madison Board of Appeals ("BOA"). Shortly after the decision was appealed, Plaintiffs retained Matthew Clark, an associate with Weeks & Hutchins, to represent them in connection with the appeal.

On December 6, 2012, the BOA held a meeting, took new evidence by way of testimony and exhibits, and reversed the Board's decision. The BOA determined that the site the Plaintiffs had applied for would not be a "feeder lot," but instead a recycling center, automobile graveyard, or a junkyard. The BOA determined that the Board's decision was not supported by substantial evidence to conclude that the location would be a "feeder site" for temporary storage only.

---

[1] White goods are household appliances that are mostly metal such as stoves, refrigerators, washers, dryers, etc..

After the reversal, Clark timely filed a Rule 80B appeal of the BOA's decision in Somerset County Superior Court. Clark did not, however, file a brief in support of the appeal. After the deadline for the brief had passed, the neighbors who originally appealed the Board's decision filed a Motion for Default and to Dismiss the appeal as interested parties. The Court ordered the Plaintiffs to show cause for their failure to file a brief and why the appeal should not be dismissed. Clark made no response to the Court's Order and did not further prosecute the appeal. The Court dismissed the Plaintiffs' Rule 80B appeal on April 20, 2013. Over the next several months, Clark did not inform the Plaintiffs of this course of events and avoided phone calls from Fred Black. Ultimately, in October 2013, the Plaintiffs fired Clark and retained new counsel who informed them that their appeal had been dismissed in April.

## SUMMARY JUDGMENT STANDARD OF REVIEW

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me. 1995). "A trial court properly grants summary judgment for the movant if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796 A.2d 683 (citing *Stanton v. University of Maine Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact-finder to choose between competing versions of the facts. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.2d 774.

3

## DISCUSSION

The Plaintiffs argue that had Clark prosecuted the appeal the Superior Court would have reviewed the Board's decision because that was the operative decision according to the Town's ordinances, and upheld it as it was supported by substantial evidence. They argue that the BOA was not authorized to hear additional evidence. They support this position with expert testimony. Therefore, the Plaintiffs maintain that they can prove the causation element of attorney malpractice.[2]

The Defendants, on the other hand, contend that the BOA was authorized to hear additional evidence and that regardless of whether the Superior Court would have reviewed the Board's or the BOA's decision, the evidence before each body supported a finding that the property would have been used as a junkyard or an automobile graveyard. Hence, Defendants argue that because the Plaintiffs cannot show that the Superior Court would have rendered a decision more favorable to them, they cannot prevail on the causation element of their attorney malpractice cause of action.

### A. The Applicable Ordinances Regarding Appeals

Madison has two ordinances relating to appeals that appear to be in conflict. Chapter 7 of Madison's ordinances addresses the BOA. The scope of review on appeal is addressed in § 7-8A, which provides that upon review of a decision, the BOA shall solely look to whether the decision was arbitrary, capricious, or rendered in bad faith; unsupported by substantial evidence, or in violation of applicable law. The very next subsection (§ 7-8B),

---

[2] To prevail on an attorney malpractice claim, the plaintiff must show "(1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 10, 742 A.2d 933. A plaintiff meets her burden to show proximate cause if she can show through expert testimony that a court's decision would have been more favorable to her had the attorney not acted negligently. *See id.* ¶ 13.

4

however, states that the BOA may "in its discretion hear additional evidence or may rely entirely upon the record of the proceedings below."

In contrast, Chapter 484-50 of Madison's ordinances govern Site Review appeal procedures. It provides:

> Board of Appeals [sic] review will be limited to a determination as to whether [sic] reasonable factual basis exists to support the Planning Board's decision or the Planning Board's decision was clearly contrary to the provisions of this chapter. The Board of Appeals may sustain or reverse a Planning Board decision. When a Planning Board decision is reversed, the Board of Appeals will articulate both the factual premises and the reasoning that support the reversal.

## B. The Applicable Ordinance Regarding Automobile Graveyards and Junkyards

Section 154-4 of Madison's ordinances mandates that anyone seeking to open a "junkyard" or "automobile graveyard" must apply to the Selectmen for a permit required by State law pursuant to 30-A M.R.S. §§ 3751 et seq. The ordinance applies to all automobile graveyards and junkyards as defined by state law in Section 3752.

According to 30-A M.R.S. § 3752(1), an automobile graveyard is a "yard, field or other outdoor area used to store 3 or more unregistered or uninspected motor vehicles . . . or parts of the vehicles [, and] includes an area used for automobile dismantling, salvage, and recycling operations." A junkyard is

> a yard, field or other outside area used to store, dismantle, or otherwise handle:
>
> A. Discarded, worn-out or junked plumbing, heating supplies, electronic or industrial equipment, household appliances or furniture;
>
> B. Discarded, scrap and junked lumber; and

5

C. Old or scrap copper, brass, rope, rags, batteries, paper trash, rubber debris, waste and all scrap iron, steel and other scrap ferrous or nonferrous material.

§ 3752(4).

## C. Analysis

The parties dispute which decision is the operative decision the Superior Court would have reviewed had the Rule 80B appeal been prosecuted. Viewing the evidence in the light most favorable to the Plaintiffs, however, and assuming that they are correct that the Board's decision was the operative decision, the "feeder yard"[3] would have amounted to a junkyard as a matter of State law. Therefore, because Madison has adopted the statutory definition of a junkyard, the site would have been a junkyard under the ordinances as well.

Automobile graveyards have been found on property littered with unregistered and/or uninspected vehicles, of which some were repairable, some in parts, and others just shells, "located randomly around . . . buildings." *Town of Leb. v. E. Lebanon Auto Sales LLC*, 2011 ME 78, ¶ 4, 25 A.3d 950. Automobile graveyards are commonly found when unregistered and/or uninspected vehicles in varying conditions and completeness are easily visible outdoors upon a person's property. *See id.*; *Town of Pownal v. Emerson*, 639 A.2d 619, 620 (Me. 1994); *Town of Mount Desert v. Smith*, 2000 ME 88, ¶ 3, 751 A.2d 445. Similarly, in all of the cases above, junkyards have been found on the same properties where there were piles of debris, including, but not limited to: shells and parts of vehicles, tires, furniture, trash, iron, barrels, wheelbarrows, scrap metal, and piping. *Id.*

Maine caselaw regarding junkyards and automobile graveyards primarily deals with the storage of the autos or debris. No caselaw has been

---

[3] The term "feeder yard" is not defined anywhere in State law or the Town's ordinance.

6

found that that describes a case exactly like this one: where cars, white goods, and scrap metal would be brought in, briefly handled, and very temporarily stored. Despite the fact that most of the caselaw only addresses storage, it cannot be avoided that the automobile graveyard statute also includes "dismantling, salvage and recycling operations."[4] Similarly, the junkyard section has language that includes the "dismantl[ing] or otherwise handl[ing]" of the scrap material. Because caselaw does not provide guidance about whether the proposed use of this site could be considered an automobile graveyard or junkyard, the legislative history of the statute is addressed next.

### i. The Legislative History of the Automobile Graveyard and Junkyard Statute

In 2003 the Junkyard and Automobile Graveyard statute was overhauled with little fanfare.[5] The definition of "junkyard" was amended to include the words in bold: "a yard, field, or other **outside** area used to store, **dismantle or otherwise handle**" the list of materials in paragraphs

---

[4] Regarding the interpretation of statutes, the Law Court has said that:

> the cardinal rule of statutory interpretation is to give effect to the intention of the Legislature. We discern legislative intent from the plain meaning of the statute and the context of the statutory scheme. All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.

*Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271 (internal citations omitted).

[5] L.D. 1367, "An Act to Amend the Laws Regarding Junkyards, Automobile Graveyards and Automobile Recycling Businesses," was introduced on March 18, 2003. It went to public hearing on April 4, 2003, was amended once, and signed into law on May 27, 2003. L.D. 1367 (121st Legis. 2003).

(A)-(C).[6] The definition of automobile graveyard was amended to change how a "junk vehicle" was classified. Instead of "unserviceable, discarded, worn-out or junked," the statute now references unregistered or uninspected motor vehicles. It has always referenced "dismantling, salvage and recycling operations[,]" but in a separate subsection of the statute than currently addresses it. The change also provided more exemptions for outside storage, but none are applicable in this case.

### ii. Because of the Changes in the Statute, the Site Would Have Been a Junkyard as a Matter of Law.

With the addition of the words "otherwise handle" to the statute, the Plaintiffs' use of the site would fall under the statutory definition of junkyard. It is undisputed that Fred Black spoke at Board hearings and described how scrap metal and other white goods would be brought to the site, put on the <u>outside</u> slab, and then loaded into trailers. Discarded household items and scrap iron would have clearly been "otherwise handled" at the site. Def.'s S.M.F. ¶¶ 10, 11.

Because of this outside handling of the materials, combined with the changes to the junkyard statute to include handling, the proposed use of the site fits squarely within the statutory definition of junkyard, and amounted to a junkyard under Madison's ordinance. Accordingly, if Clark had prosecuted the Plaintiffs' appeal and the Superior Court had reviewed the Board's decision, it would have determined that the Board made an error of law in determining that the site was a "feeder yard" and not a junkyard, and would have reversed it. If, on appeal, the Superior Court reviewed the BOA decision, it would have found substantial evidence supporting the

---

[6] For clarity, before the 2003 change, the statute read: "[j]unkyard" means a yard, field or other area used to store[]" and then provided a list of materials that is almost identical to the current statute. 30-A M.R.S. 3752(4) (2002).

8

conclusion that the site would have been a junkyard as a matter of law, and upheld it. This Court need not address whether the site would have also amounted to an automobile graveyard because the use only had to fall into one of the categories, not both, for either the Board or the BOA to deny the application under the ordinance.

The Plaintiffs cannot meet their burden to show proximate causation between Clark's negligence in failing to file the Rule 80B brief and their damages because they cannot show that the filing of the brief would have resulted in a better, different result: either the Board's decision being upheld, or the BOA's decision being overturned.

## CONCLUSION

The entry is:

Defendants' Motion for Summary Judgment is GRANTED.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R.Civ.P. 79(a).

Dated: November 9, 2018

William R. Stokes
Justice, Maine Superior Court

9